William BROTON, as parent and natural Guardian of John Broton, a minor, Respondent,

v.

WESTERN NATIONAL MUTUAL INSURANCE COMPANY, Petitioner, Appellant,

State Farm Mutual Automobile Insurance Company, Defendant.

No. C0-87-1124.

Supreme Court of Minnesota.

Aug. 26, 1988.

See also, 428 N.W.2d 91.

James T. Martin, Edina, for appellant.

Joseph F. Chase, Rochester, for respondent.

COYNE, Justice.

This declaratory action requires interpretation of a 1985 amendment to the Minnesota No–Fault Automobile Insurance Act governing the maximum liability of insurers for underinsured motorist coverage. The trial court and court of appeals ruled that the 1985 amendment codified as Minn. Stat. § 65B.49, subd. 4a (1986) did not change underinsured motorist coverage and that an injured party whose damages exceed the limits of the tortfeasor's liability insurance may recover underinsured motorist benefits even if the limits of the tortfeasor's liability coverage equal or exceed the limits of the underinsured motorist coverage, provided the injured party had not already accepted payment by or on behalf of the tortfeasor. *Broton v. Western National Mutual Ins. Co.*, 413 N.W.2d 829 (Minn.App.1987). We reverse.

In March 1986 John Broton sustained damages stipulated to exceed $100,000 when the car in which he was a passenger collided with another vehicle. At the time of the accident the car occupied by Broton was owned by Gary Bausman, operated by Bausman's son, and insured by Western National Mutual Insurance Company. The personal automobile policy issued by Western includes bodily injury liability coverage with declared limits of $100,000 per person and combined uninsured (UM) and underinsured (UIM) coverage with declared limits of $100,000 per person. The UIM section of the policy contains the following provision limiting liability:

> The limit of liability for this [UIM] coverage shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy.

The one-year policy period commenced January 16, 1986, after the effective date of the 1985 amendments to the No–Fault Act.

In November 1986 Broton demanded payment of the $100,000 UIM limits of the Western policy. In response, Western tendered a $100,000 draft, representing the bodily injury liability limits of the policy and negotiable upon release of Western's named insureds from further liability. Western denied liability under the UIM portion of the policy, relying on Minn.Stat. § 65B.49, subd. 4a (1986) and the terms of the policy itself. Broton returned the draft to Western and instituted this action seeking a declaration that he was entitled to recover UIM benefits under the policy to the extent his damages exceeded the policy's $100,000 bodily injury liability limits. The trial court granted plaintiff's motion for summary judgment and the court of appeals affirmed. We then granted Western's petition for further review.

At issue is the following statutory provision enacted as part of the 1985 amendments to the No–Fault Act which reads:

> Subd. 4a. **Liability on underinsured motor vehicles.** With respect to underinsured motor vehicles, the maximum liability of an insurer is the lesser of the difference between the limit of underinsured motorist coverage and *the amount paid* to the insured by or for any person or organization who may be held legally liable for the bodily injury; or the amount of damages sustained but not recovered.

Minn.Stat. § 65B.49, subd. 4a (1986) (emphasis added).

Relying on the court of appeals' earlier construction of section 65B.49, subd. 4a, in *Thompson v. Allstate Ins. Co.*, 412 N.W.2d 386 (Minn.App.1987) (no liability under UIM coverage because the difference between the amount paid to insured by or on behalf of tortfeasor and the insured's UIM coverage limit is zero), Western contends that its liability to Broton under the UIM coverage is zero because the $100,000 limit of the Bausmans' liability coverage, all of which has been tendered to Broton, equals the $100,000 limit of the UIM coverage.

Broton concedes that *Thompson* was decided correctly. He also concedes that had he accepted Western's proffered payment of $100,000, the limit of its liability coverage, then section 65B.49, subd. 4a, would preclude recovery of UIM benefits because the difference between the applicable UIM limit of $100,000 and "the amount paid" ($100,000) would be zero. Nevertheless, Broton asserts that Western is liable for UIM benefits to the extent his damages exceed the tortfeasor's $100,000 liability insurance limit because no amount has yet been "paid" by or for the tortfeasor. His position is that section 65B.49, subd. 4a simply works "some procedural changes" in the handling of UIM claims and that an injured person can avoid the operation of the statute merely by refusing to dispose of the claim against the tortfeasor until after receiving UIM benefits up to the declared policy limit. We cannot agree.

Some historical perspective is necessary to an understanding of the purpose and effect of the legislature's 1985 amendment of section 65B.49. In 1971 the legislature enacted a provision requiring insurers to make available UIM coverage as an optional coverage under which:

> the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon, to the extent of the policy limits on the vehicle of the party recovering or such smaller limits as he may select *less the amount paid* by the liability insurer of the party recovered against.

Act of May 27, 1971, ch. 581, § 1, 1971 Minn.Laws 1082–83, *codified at* Minn.Stat. § 65B.26(d) (1971) (emphasis added). This statute was interpreted in *Lick v. Dairyland Ins. Co.*, 258 N.W.2d 791 (Minn.1977). In *Lick* the plaintiff sought to recover the $20,000 UIM limits of the applicable policy after receiving payment of the tortfeasor's $20,000 liability limits. This court affirmed summary judgment for the insurer, stating that "the amount paid under the insurance policy of the tortfeasor is properly deducted from the underinsured motorist coverage; it is only to the extent that the underinsured motorist coverage exceeds the tort-

feasor's insurance that the tortfeasor is underinsured." *Lick*, 258 N.W.2d at 794. This method of calculating the available amount of UIM coverage became known as the "difference of limits."

In 1974 the legislature enacted the Minnesota No–Fault Automobile Insurance Act and in the process repealed the statutory provision interpreted in *Lick* and replaced it with Minn.Stat. § 65B.49, subd. 6(e), the mandatory offer of UIM as an optional coverage. Act of April 11, 1974, ch. 408, § 9, 1974 Minn.Laws 762, 771–74. That provision, in turn, was amended in 1977. Act of May 25, 1977, ch. 266, § 3, 1977 Minn.Laws 437, 438.

In *Holman v. All Nation Ins. Co.*, 288 N.W.2d 244 (Minn.1980), this court concluded that the 1977 amendments had the effect of overruling the "difference of limits" method articulated in *Lick* for determining a UIM carrier's maximum liability. Instead, UIM coverage was to be calculated on an "add-on" basis, which treats UIM benefits as recoverable to the extent damages exceed the tortfeasor's available liability coverage. *Holman*, 288 N.W.2d at 251. In addition, the "stacking" principle previously applied to mandatory coverages, *Wasche v. Milbank Mutual Ins. Co.*, 268 N.W.2d 913 (Minn.1978); *Van Tassel v. Horace Mann Mutual Ins. Co.*, 296 Minn. 181, 207 N.W.2d 348 (1973), was extended to UIM coverage, and the insured was permitted to stack the UIM coverage applicable to each covered vehicle. *Holman*, 288 N.W.2d at 251.

The add-on and stacking bases for determining the available limits of UIM coverage remained the rule after the 1980 repeal of Minn.Stat. § 65B.49, subd. 6 (1980), *see Hoeschen v. South Carolina Ins. Co.*, 378 N.W.2d 796, 800 (Minn.1985), until 1985, when rising automobile insurance rates prompted legislative response. *Hanson v. American Family Mutual Ins. Co.*, 417 N.W.2d 94, 96 (Minn.1987).[1] The bill introduced as House File 345 was described as containing "two major provisions." The first would eliminate stacking of UIM coverage; the second would provide that UIM coverage be applied on "a difference of limits or offset basis, as opposed to an add-on basis." Sen. debate on H.F. 345, 74th Minn.Leg., May 8, 1985 (audio tape) (statement of Sen. Petty). Stacking was eliminated by Act of June 27, 1985, ch. 10, § 68, 1st Sp.Sess. 1985 Minn.Laws 1781, 1840–41, codified as Minn.Stat. § 65B.49, subd. 3a(6) (1986). The second major provision was enacted as Minn.Stat. § 65B.49, subd. 4a (1986). Act of June 7, 1985, ch. 309, § 6, 1985 Minn.Laws 1537, 1539. The peregrination of section 65B.49, subd. 4a through the legislative process makes abundantly clear the legislature's purpose: to return the calculation of the available amount of UIM coverage to a difference of limits basis.[2]

Broton contends, however, that the statutory language belies the intent, that the definition of "underinsured motor vehicle" is inconsistent with a difference of limits format because it defines an underinsured motor vehicle in terms of damages in excess of the limits of the tortfeasor's liability insurance and omits any reference to the limits of the applicable UIM coverage:

> Both times her proposed amendment was defeated, Minutes 9th meeting, H.Comm.Fin.Insts. and Ins., 74th Minn.Leg., March 13, 1985 at 15. 1 J. House, 74th Minn.Leg., March 25, 1985 at 1023–24.
>
> That the Senate also recognized that H.F. 345 was intended to change the calculation of UIM coverage from an add-on to a difference of limits basis is apparent in both committee hearings and floor debate. *See* Hearing on H.F. 345, S.Comm.Econ.Development and Commerce, 74th Minn.Leg., April 16, 1985 (audio tape); Senate debate on H.F. 345, 74th Minn.Leg., May 8, 1985 (audio tape).

1. *See also* Hearing on H.F. 345, H.Comm.Fin. Insts. and Ins., 74th Minn.Leg., March 13, 1985 (audio tape) (comments of Rep. Seaberg, House sponsor of the bill); Hearing on H.F. 345, Sen. Comm.Econ.Development and Commerce, 74th Minn.Leg., April 16, 1985 (audio tape) (comments of Sen. Petty, Senate sponsor of the bill).

2. Representative Ann Wynia twice moved this amendment of H.F. 345 designed to preserve the add-on basis for calculating UIM coverage:

> With respect to underinsured motor vehicles, the maximum liability of an insurer is the lesser of the limit of underinsured motorist coverage or the amount of damages sustained but not recovered.

"Underinsured motor vehicle" means a motor vehicle or motorcycle to which a bodily injury liability policy applies at the time of the accident but its limit for bodily injury liability is less than the amount needed to compensate the insured for actual damages.

Minn.Stat. § 65B.43, subd. 17 (1986). That the motor vehicle which causes the injury falls within the foregoing definition is, of course, necessary to invoke UIM coverage. That the motor vehicle is underinsured, however, does not establish, or even address, the amount of UIM coverage available to the insured. The insurer's maximum liability with respect to the underinsured motor vehicle is fixed by Minn.Stat. § 65B.49, subd. 4a (1986) at the difference between the declared limit of UIM coverage and the amount paid to the insured by or on behalf of the tortfeasor or the amount of damages sustained but not recovered, whichever is the lesser amount. This method of structuring a difference of limits statute is not unique. *See, e.g.*, Ill. Ann.Stat. ch. 73, ¶ 755a–2(3) (Smith Hurd Supp.1987).

█ Broton's principal argument revolves about the retention of the words "amount paid" in section 65B.49, subd. 4a after deletion of a subdivision providing that neither uninsured nor underinsured motorist coverage should apply until all applicable liability insurance had been exhausted by payment of judgments or settlements. The exhaustion requirement was removed by a technical amendment suggested by the commissioner of commerce. Act of June 7, 1985, ch. 309, § 5, 1985 Minn.Laws 1537, 1538–39. Apart from the fact that it seems to us unlikely that one of the chief proponents of the difference of limits format would either propose or characterize as noncontroversial an amendment intended to make UIM coverage an add-on coverage,[3] elimination of the exhaustion requirement seems to us a change designed only to facilitate the prompt disposition of UIM claims. *Cf., Schmidt v. Clothier*, 338 N.W.2d 256, 260–61 (Minn.1983) (policy provision denying insured UIM benefits unless applicable liability limits have been exhausted discourages settlement and is void as against public policy).

█ Nor does the removal of an exhaustion requirement necessitate the substitution in subdivision 4a of section 65B.49 of the "amount paid or payable" or the tortfeasor's "liability limits" for the words "amount paid." If the UIM insurer's maximum liability were to be measured by the difference between the declared limit of the UIM coverage and the "amount paid or payable" to the insured by or for the tortfeasor, the insurer would never have any liability under the UIM coverage because the "amount payable" by the tortfeasor is the full amount of the injured person's damages. Elimination of any possible benefit from mandatory coverage is not part of the statutory structure.

Substituting "liability limits" for "amount paid" poses other problems. An injured claimant does not always receive the full limit of the tortfeasor's liability insurance even though the claimant's damages exceed the policy limits. The insurance may be exhausted by the claims of other persons injured in the same accident. Or the limits of the tortfeasor's liability insurance may be distributed among multiple claimants in such fashion that no one claimant receives the full per person limit. Questionable liability may make settlement for the full amount of the tortfeasor's insurance impossible although the parties might be able to reach a suitable compromise. If the UIM insurer's maximum liability were measured by the limit of the tortfeasor's liability insurance rather than the "amount paid," the UIM insured's aggregate recovery in each of these situations would be less than the declared limits of the UIM coverage. *See Thiry v. Horace Mann Mutual Ins. Co.*, 269 N.W.2d 66 (Minn.1978). By adopting the "amount paid" as the measure for determining the UIM insurer's maximum liability the legislature avoided both the Scylla of "amount payable" and the Charybdis of "liability limits." In settling upon the term "amount paid" the legislature no doubt had in mind this canon of statutory construction: "[W]ords used in the past or present tense include the future." Minn.Stat. § 645.08(2) (1986).

█ The legislature's choice of language also has the effect of closing the "gap" discussed in *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). In *Schmidt* we held that a UIM insured could not enter into a settlement with the tortfeasor for an amount less than the limit of the tortfeasor's liability insurance and then recoup the "gap" between the liability insurance limit and the settlement amount from the UIM insurer. *Id.* at 261. By pegging the UIM insurer's maximum liability to the

---

3. Senate debate on H.F. 265, 74th Minn.Leg., May 20, 1985 (audio tape).

"amount paid" the insured by or for the tortfeasor, the legislature effectively codified the position of the *Schmidt* dissenters, who argued that an insured who communicates the tortfeasor's settlement offer to the UIM insurer should be entitled to recover the gap from the UIM insurer. *Id.* at 264. We note, however, that a motor vehicle is underinsured only if the limit of the applicable bodily injury liability policy is less than the amount needed to compensate the injured party, Minn.Stat. § 65B.43, subd. 17 (1986), and that an UIM insured who settles with and releases an underinsured tortfeasor without notifying the UIM insurer does so at his or her peril. *Klang v. American Family Ins. Group,* 398 N.W.2d 49 (Minn.App.1986); *Fladager v. Farm Bureau Mutual Ins. Co.,* 414 N.W.2d 551 (Minn.App.1987).

In summary, then, the amount recoverable under UIM coverage is not a matter of timing; the limit of UIM coverage is not dependent on whether the UIM claim is made before or after the UIM insured has disposed of his or her claim against the tortfeasor. We hold that the maximum liability of the insurer with respect to underinsured motorist coverage is the lesser of the difference between the limits of UIM coverage set out in the policy declarations or schedules and the amount which has been paid or will be paid to the insured by or for the tortfeasor or tortfeasors, or the amount of damages sustained but not recovered.

Reversed.

YETKA, J., concurs specially.

POPOVICH, J., took no part in the consideration or decision of this case.

YETKA, Justice (concurring specially).

I agree with the majority that the legislature intended UIM benefits to be calculated on a "difference of limits" basis. A review of the legislative history of the 1985 amendments to the No–Fault Act makes this intent unmistakeably clear. While this intent is clear, however, the chosen statutory language sends out conflicting messages. These conflicting messages compel me to write separately in order to point out the misleading nature of this statute.

When the legislature amended the No–Fault Act in 1985 by creating Minn.Stat. § 65B.49, subd. 4a (1986) (maximum liability for UIM benefits), it intended a change in the method of calculating UIM benefits from an "add-on" basis to a "difference of limits" basis. In those same 1985 amendments, however, the legislature provided, for the first time, a definition of an "underinsured motor vehicle." Minn.Stat. § 65B.43, subd. 17 (1986). The definition is stated in terms consistent with an "add-on" basis for calculating UIM benefits. Specifically, an "underinsured motor vehicle" is one "to which a bodily injury liability policy applies" with a limit "less than the amount needed to compensate the insured for actual damages." *Id.*

Under this definition, a purchaser of UIM coverage might reasonably believe he or she is gaining protection against any case where the tortfeasor's liability coverage is insufficient to compensate fully for all damages. Yet, the existence of damages in excess of the tortfeasor's liability limits does not, as we hold today, guarantee availability of the added protection of UIM benefits. Ordinarily, if the tortfeasor has liability coverage with limits equal to or greater than the limits of the UIM coverage, then no UIM benefits will be available even if damages far exceed the tortfeasor's liability limits. Only where the limits of the UIM coverage (as well as damages) exceed the tortfeasor's liability limits will UIM benefits be available.

The majority explains the statutory definition as the first step in determining whether UIM benefits are available. I see this definition as potentially misleading to the purchaser of UIM coverage. Although a particular vehicle may fall within this definition and a person injured by such a vehicle may have purchased UIM coverage, there is no guarantee UIM benefits will be available.

In short, while I agree with the majority that the legislature intended a "difference of limits" basis for calculating UIM benefits, the existence of the statutory definition of "underinsured motor vehicle" leads me to write separately to put purchasers of UIM coverage on notice that they may not be getting the type of protection they think they are purchasing.