## Clifford BROSDAHL, Appellant,

v.

## MINNESOTA MUTUAL FIRE AND CASUALTY COMPANY, American Family Mutual Insurance Company, Respondents.

No. C9-87-2241.

Court of Appeals of Minnesota.

March 28, 1989.

Robert Dildine, Martin Berg Law Office, Roseau, for Clifford Brosdahl.

Michael J. Morley, Morley & Morley, Ltd., Grand Forks, N.D., for Minnesota Mut. Fire and Cas. Co.

Jay Fiedler, Letnes, Marshall, Fiedler & Clapp, Ltd., Grand Forks, N.D., for American Family Mut. Ins. Co.

Considered and decided by LANSING, P.J., and HUSPENI and FORSBERG, JJ., without oral argument.

## OPINION

FORSBERG, Judge.

Appellant Clifford Brosdahl brought this declaratory judgment action against his underinsured motorist (UIM) carriers, respondents Minnesota Mutual Fire and Casualty Company (Minnesota Mutual) and American Family Mutual Insurance Company (American Family). Ruling that appellant must first seek relief against the tortfeasor, the trial court granted respondents' motions for summary judgment and dismissed the action. This appeal was taken from the subsequently entered judgment.

Because this case involved issues substantially similar to those in *Broton v. Western National Mutual Insurance Co.*, 413 N.W.2d 829 (Minn.Ct.App.1987), *pet. for rev. granted* (Minn. Dec. 23, 1987), our request for certification to the supreme court was granted. Subsequent to its decision in *Broton*, 428 N.W.2d 85 (Minn.1988), the supreme court remanded *Brosdahl* back to this court for a decision on the merits. We reverse the trial court's grant of summary judgment.

## FACTS

On February 6, 1987, Brosdahl was driving a truck owned by Charles Prosser when one of the back tires went flat. As he was kneeling beside the truck changing the tire, his foot was run over by a vehicle driven by Orville Scharf. A number of bones in his foot were broken or chipped.

Appellant was the named insured on two policies issued by American Family. As the driver of Prosser's truck, he was also an insured under the policy covering the truck and issued by Minnesota Mutual. The policies issued by respondents all provided UIM coverage.

Appellant brought a negligence action against Scharf and this declaratory judgment against respondents, his UIM carriers. Respondents moved for summary judgment, arguing that this action was premature because there was a dispute as to the extent of appellant's damages and as to whether he was contributorily negligent. In granting summary judgment, the trial court agreed that appellant must first seek relief from the alleged tortfeasor Scharf before seeking UIM coverage and proceeding against respondents.

## ISSUES

1. May appellant proceed against his UIM carriers before concluding a claim against the tortfeasor?

2. Should we allow supplementation of the record on appeal?

## ANALYSIS

1. On appeal from a grant of summary judgment, this court must determine whether there are any genuine issues of material fact, and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

*Broton* involved interpretation of the following statute, which was amended in 1985 to read:

> Subd. 4a. **Liability on underinsured motor vehicles.** With respect to underinsured motor vehicles, the maximum liability of an insurer is the lesser of the difference between the limit of underinsured motorist coverage and the amount *paid* to the insured by or for any person or organization who may be held legally liable for the bodily injury; or the amount of damages sustained but not recovered.

Minn.Stat. § 65B.49 (1986) (emphasis added).

In *Broton*, it was stipulated that the injured insured's damages exceeded the limits of the tortfeasor's liability insurance. This court nevertheless concluded that Minn.Stat. § 65B.49, subd. 4a did not preclude recovery of UIM benefits even if the limits of liability coverage equalled or exceeded the limits of UIM coverage, provided that the insured had not already accepted payment (or been "paid") by the tortfeasor. *Broton*, 413 N.W.2d at 833; *see also Thompson v. Allstate Insurance Co.*, 412 N.W.2d 386 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Nov. 13, 1987). This court's decision thus allowed the insured to avoid the consequences of the "difference of limits" measure of UIM coverage by pursuing a claim against the UIM carrier first.

In reversing this court, the supreme court in *Broton* held:

> [T]he amount recoverable under UIM coverage is not a matter of timing; the limit of UIM coverage is not dependent on whether the UIM claim is made before or after the UIM insured has disposed of his or her claim against the tortfeasor. We hold that the maximum liability of the insurer with respect to underinsured motorist coverage is the

lesser of the difference between the limits of UIM coverage * * * and the amount which has been paid or will be paid to the insured by * * * the tortfeasor * * *, or the amount of damages sustained but not recovered.

428 N.W.2d at 90. Thus, while there is no longer any advantage to pursuing a claim against respondents first, *Broton* does not expressly prohibit appellant from opting to do so. Indeed, the above language fully contemplates that such an option remains available.[1]

Respondents nonetheless argue that the following language from *Broton* indicates that an insured may not claim UIM benefits before pursuing a claim against the tortfeasor:

[Broton's] position is that Section 65B.49, subd. 4(a), simply works "some procedural changes" in the handling of UIM claims and that an injured person can avoid the operation of the statute merely by refusing to dispose of the claim against the tortfeasor until after receiving UIM benefits up to the declared policy limit. We cannot agree.

428 N.W.2d at 87. These statements, however, merely indicate that an insured may not avoid the "difference of limits" measure of coverage by the timing of his lawsuits; again, nothing in *Broton* precludes an insured from pursuing a UIM claim first.

Respondents further argue that the "amount paid" language in Minn.Stat. § 65B.49, subd. 4a assumes that an insured has already sought compensation from the tortfeasor before seeking recovery from his UIM carrier, and that an insured cannot make a claim for UIM benefits until liability and the amount of damages have been determined. Respondents also argue that an insured must prove that the tortfeasor is "underinsured"[2] before a claim for UIM coverage can be made.

Appellant correctly notes that whether or not a tortfeasor is underinsured and the amount of an injured party's damages involve factual issues which are often determined by litigation with the UIM carrier. Here, appellant merely seeks to prove his damages and lack of contributory negligence either through arbitration or litigation; he will not be able to collect any benefits until determinations are made on these issues.

In granting summary judgment, the trial court accepted respondents' arguments that appellant's suit was premature, and that respondents could not be sued until the facts necessary to appellant's cause of action were proven or stipulated. Where material issues of fact remain in dispute, however, summary judgment is inappropriate.

2. At some point during the pendency of this appeal, respondents discovered that appellant had in fact continued with his suit against the tortfeasor Scharf. Respondents now move to supplement the record and for acceptance of two supplemental appendices, which include a certified copy of the jury's special verdict in *Brosdahl v. Scharf* and an order from that case. These documents indicate that appellant's case against Scharf was tried and concluded on October 20, 1988, and that a judgment against Scharf has been entered.

Respondents argue that consideration of these documents renders this appeal moot because appellant has pursued and concluded his claim against the tortfeasor. Appellant counters that his case against Scharf is still pending because post-trial motions have been served and settlement negotiations are continuing.

■ "[I]f, pending an appeal, an event occurs which renders it impossible to grant any relief or which makes a decision unnecessary, the appeal will be dismissed" as

---

1. While we do not understand why appellant continues to choose to proceed first against his UIM carriers, he has not offered to dismiss this appeal. Because the issue presented by this appeal remains viable, we will address it.

2. A tortfeasor is underinsured when driving a vehicle with liability limits which are less than the amount needed to compensate the injured insured. *See* Minn.Stat. §§ 65B.43, subd. 19 (definition of "underinsured motorist coverage"), 65B.43, subd. 17 (definition of "underinsured motor vehicle").

moot. *Barnes v. Macken*, 252 Minn. 412, 415–16, 90 N.W.2d 222, 226 (1958) (citing *Mid–West Wine Co., Inc. v. Ericson*, 227 Minn. 24, 34 N.W.2d 738 (1948)). Although these documents will undoubtedly affect the disposition of this case, at this time we cannot conclude with certainty that they render this appeal moot. A decision on the effect of these documents is more appropriately left to the trial court, which has the ability to request additional information and gather evidence. We therefore refuse to consider these documents on appeal.

Finally, prior to certification of this case to the supreme court, respondents had filed a motion with this court to strike a letter which appellant had included in his appendix. In that letter, the trial judge stated that upon reconsideration he should not .have granted summary judgment to respondents. Because the judge's letter was merely sent to the parties, is not part of the district court file, and was sent after notice of appeal was filed in this case, it should be stricken from the appellate record. *See Safeco Insurance Co. v. Diaz*, 385 N.W.2d 845, 847 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. June 30, 1986) (court generally may not base its decision on matters outside the record); Minn.R.Civ. App.P. 110.01 (appellate record is limited to "[t]he papers filed in the trial court, the exhibits, and the transcript"). Even if we were to accept the letter into evidence, it would have no effect on our decision in this case. This appeal involves an issue of law, and the trial judge's opinion has little persuasive value because it is based in part on our now-reversed decision in *Broton*.

### DECISION

The trial court's grant of summary judgment and its dismissal of this case is reversed.