**Darrell Robert NEUMAN, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., an Illinois corporation, Respondent.**

**No. C2–91–1209.**

Court of Appeals of Minnesota.

Jan. 21, 1992.

Review Granted March 26, 1992.

John P. Clifford, Meshbesher & Spence, Ltd., Minneapolis, for appellant.

Kay Nord Hunt, Michael P. Shroyer, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondent.

Considered and decided by PETERSON, P.J., and FORSBERG and SHORT, JJ.

## OPINION

PETERSON, Judge.

Appellant Darrell Neuman brought this declaratory judgment action seeking a determination of the amount of underinsured motorist (UIM) coverage available to him under three insurance policies issued by respondent State Farm. A final appealable judgment was entered in favor of State Farm. We affirm.

## FACTS

Darrell Neuman was injured on October 26, 1985, when his 1977 Ford pick-up was struck by a motor vehicle operated by Arthur Bruce. Bruce, who was insured by Farmers Insurance Group, carried liability coverage of $100,000 per person, $300,000 per occurrence. Farmers agreed to pay Neuman $95,000 of the $100,000 available. Following proper notice, State Farm agreed to allow Neuman to accept the $95,000. The parties have stipulated that Neuman's damages may exceed the $95,000 paid by Farmers.

Neuman owned three vehicles, which were insured under three separate insurance policies issued by State Farm. The three vehicles were the 1977 Ford pick-up involved in the accident, a 1985 Pontiac and

a 1977 Buick. Neuman's policy on the 1977 Ford pick-up came up for renewal in October of 1985, prior to the accident and after the effective date of the 1985 legislative amendments to the No–Fault Act. As required by the 1985 amendments, State Farm added UIM coverage to Neuman's policy with liability limits equal to the liability limits of Neuman's uninsured motorist coverage. When Neuman renewed his policy on the 1977 Ford pick-up, he elected to purchase stacked UIM coverage, which State Farm refers to as Coverage W3. At the time of the accident, Neuman had yet to renew the insurance policies on his two other vehicles. The insurance policies on Neuman's two other vehicles did not contain underinsured motorist coverage; however, because Neuman elected to purchase stacked UIM coverage on the 1977 Ford pick-up, State Farm agrees he is entitled to UIM coverage on his two other policies.

As a result, the insurance policies issued by State Farm to Neuman provided UIM coverage with the following limits of liability set out in the policy declarations:

| | |
|---|---|
| Vehicle No. 1 (1977 Ford pick-up): | $ 50,000 per person/<br>$100,000 per occurrence |
| Vehicle No. 2 (1985 Pontiac): | $100,000 per person/<br>$200,000 per occurrence |
| Vehicle No. 3 (1977 Buick): | $ 50,000 per person/<br>$100,000 per occurrence |

State Farm takes the position that the policy language requires that the $95,000 Neuman received from Farmers be offset separately against the limits of liability under the UIM coverage provided by each policy. Under State Farm's construction, Neuman would be entitled to the following coverage:

| | | |
|---|---|---|
| Vehicle No. 1: | $ 50,000<br>−95,000 | limit of liability<br>offset |
| | $ 0 | |
| Vehicle No. 2: | $100,000<br>−95,000 | limit of liability<br>offset |
| | $ 5,000 | |
| Vehicle No. 3: | $ 50,000<br>−95,000 | limit of liability<br>offset |
| | $ 0 | |

Under State Farm's analysis, Neuman is entitled to $5,000 UIM coverage.

Neuman takes the position that the limits of liability under the UIM coverage of the three policies must be combined *before* the $95,000 is offset. Neuman calculates the available UIM coverage as follows:

| | |
|---|---|
| $200,000 | combined limits of liability<br>(50,000 + 100,000 + 50,000) |
| −95,000 | offset |
| $105,000 | |

Under Neuman's analysis, he is entitled to $105,000 in UIM coverage.

Neuman moved for summary judgment. The trial court denied this motion, and Neuman sought reconsideration. The trial court, noting single-vehicle UIM coverage was designated "W" and stacked coverage was designated "W3," ordered additional briefing. After receiving additional briefs, the trial court denied Neuman's motion for reconsideration. The parties stipulated to entry of a final appealable judgment pursuant to Minn.R.Civ.P. 54.02, and Neuman appealed.

### ISSUE

Did the trial court err in interpreting the State Farm policies to require that the $95,000 paid to Neuman be separately offset against the limit of liability under the UIM coverage provided by each of Neuman's policies?

### ANALYSIS

#### 1. Standard of Review

■ There is no dispute about any of the relevant facts. The trial court's decision was based on its interpretation of the State Farm policies. This is a question of law on which this court need not defer to the trial court. Iowa Kemper Ins. Co. v. Stone, 269 N.W.2d 885, 886–87 (Minn.1978).

#### 2. UIM Coverage

When the No–Fault Act was first adopted, insurers were required to offer UIM coverage. Minn.Stat. § 65B.49 (1974). This coverage was "add-on"; that is, it was added on to the other driver's liability coverage. If an insurer failed to make an adequate offer of UIM coverage, the coverage would be read into the policy according to the terms of the statute. Holman v. All Nation Ins. Co., 288 N.W.2d 244, 250

(Minn.1980). In response to the Holman decision, the legislature repealed the UIM statute in 1980. See Hauer v. Integrity Mut. Ins. Co., 352 N.W.2d 406, 408 (Minn. 1984).

■ In 1985, the legislature adopted a new UIM statute.[1] The 1985 amendments established a modified "difference in limits" formula for determining whether an insured could receive UIM benefits. See Broton v. Western Nat. Mut. Ins. Co., 428 N.W.2d 85 (Minn.1988). Under this formula, the maximum liability of an insurer was the difference between the limits of UIM coverage set out in the policy declarations and the amount which "has been paid or will be paid" to the insured by or on behalf of the tortfeasor, or the amount of damages sustained but not recovered, whichever is less. Broton, 428 N.W.2d at 90.[2]

■ In addition to changing the calculation of the amount recoverable under UIM coverage the 1985 amendments prohibited judicially imposed stacking of UIM coverage. In re State Farm, 392 N.W.2d at 567. The 1985 amendments, however, did not prohibit contractual stacking of UIM coverage. Austin Mut. Ins. Co. v. Templin, 435 N.W.2d 584, 587 (Minn.App.1989), pet. for rev. denied (Minn. Apr. 24, 1989). The State Farm policies at issue in the present case provide for contractual stacking.

#### 3. Offset

State Farm agrees that Neuman's UIM coverage can be stacked. Both parties agree that Neuman is entitled to the "difference in limits" UIM coverage enacted in 1985. The parties disagree about how the payment made on behalf of the tortfeasor is to be offset against Neuman's UIM liability limits.

1. The legislature enacted several conflicting UIM bills. This court eventually determined which enactments were controlling. See In re State Farm Mut. Auto. Ins. Co., 392 N.W.2d 558 (Minn.App.1986).

2. Effective August 1, 1989, calculation of UIM benefits was returned to an "add-on" basis. 1989 Minn.Laws ch. 213, § 2; 1989 Minn.Laws ch. 356, § 20, codified at Minn.Stat. § 65B.49, subd. 4a (1990). The 1989 amendment is not relevant to the issues on appeal.

██ An insurance policy is similar to other contracts. The terms of the policy determine the extent of the insurer's liability. *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). Stacking is permitted by the language of the State Farm policies. The extent of State Farm's liability for stacked UIM coverage must also be determined from the language of the policies.

██ The UIM coverage language in Neuman's policies reads as follows:

Limits of Liability

Coverage W3

2. The most we will pay under this [underinsured motorist] coverage will be the lesser of:

a. the difference between the limits of liability of this [underinsured motorist] coverage and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury; or

b. the difference between the amount of the insured's damages for bodily injury, and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury.

(Paragraph 2.a.)

The State Farm policies also address how stacked coverage is to be calculated. The relevant policy provisions read:

3. If the insured sustains bodily injury while occupying a vehicle which is not your car or a newly acquired car and such vehicle is:

a. owned by you or your spouse and described on the declarations page of another policy, coverage under this policy applies as excess to any other applicable underinsured motor vehicle coverage.

(Paragraph 3.a.)

These provisions apply to each of the three policies at issue in the present case. In each policy, State Farm agreed to pay UIM benefits if its insured is involved in an accident involving a tortfeasor whose insurance is insufficient to pay for the damage caused *and* the UIM benefits purchased

exceed the tortfeasor's payment. Paragraph 3.a. does not create a new method of determining the amount that will be paid under Neuman's UIM coverage if he owns more than one insured vehicle; instead, it only describes additional circumstances in which UIM coverage, in the amount determined by paragraph 2.a., will apply. The stacking provision does not change the language of the policy regarding State Farm's limits of liability for UIM coverage.

Applying the terms of the insurance policy, we conclude the trial court correctly offset Neuman's prior settlement with the tortfeasor against the limit of liability under the UIM coverage provided by each policy. UIM coverage was available to Neuman first under the terms of the policy on the 1977 Ford. The amount of UIM coverage provided by that policy, as stated in the policy, is the difference between the limits of liability of UIM coverage in Neuman's policy and the amount paid to Neuman by the tortfeasor. In the present case, the difference between the limits of liability of the State Farm policy, $50,000, and the amount paid to Neuman by the tortfeasor, $95,000, is $0.

Neuman can then turn to the UIM coverage available under the stacking provisions of the State Farm policies on his 1985 Pontiac and his 1977 Buick. The stacking provision of these policies reads:

3. If the insured (Neuman) sustains bodily injury while occupying a vehicle (the 1977 Ford) which is not your car (the 1985 Pontiac or the 1977 Buick) or a newly acquired car and such vehicle (the 1977 Ford) is:

a. owned by you (Neuman) or your spouse and described on the declarations page of another policy, coverage under this policy (the policies for the 1985 Pontiac and the 1977 Buick) applies as excess to any other applicable underinsured motor vehicle coverage.

The available UIM coverage under each of these policies must then be determined by applying the policy terms as was done with the terms of the policy on the 1977 Ford. UIM coverage available to Neuman under the policy on the 1985 Pontiac would be

$100,000 (the limit of liability under the UIM coverage on the 1985 Pontiac) minus $95,000 (the amount paid by the tortfeasor) or $5,000. The available UIM coverage under the policy on the 1977 Buick would be $50,000 (the limit of liability under the UIM coverage on the 1977 Buick) minus $95,000 (the amount paid by the tortfeasor) or $0. Accordingly, the limit of liability under the UIM coverage available to Neuman under his three stacked policies is $5,000.

### DECISION

The trial court correctly set off the amount received from the tortfeasor against the UIM liability limits of each State Farm policy.

Affirmed.