Rodney Lynn **RICHARDS**, Appellant,

v.

**MILWAUKEE INSURANCE COMPANY,**
Respondent.

No. C2–93–596.

Court of Appeals of Minnesota.

Sept. 7, 1993.

Review Granted Dec. 14, 1993.

John T. Buchman, John T. Gores, Soucie & Buchman, Ltd., Anoka, for appellant.

Theodore J. Smetak, Gregory J. Johnson, Arthur, Chapman, McDonough, Kettering & Smetak, P.A., Minneapolis, for respondent.

Considered and decided by RANDALL, P.J., and CRIPPEN and HARTEN, JJ.

## OPINION

CRIPPEN, Judge.

This appeal concerns the definition of an underinsured motor vehicle and when an insured may recover a gap in coverage between a settlement and the tortfeasor's policy limit.

## FACTS

Appellant Rodney Lynn Richards was injured in a 1988 two-car collision. Richards had no-fault and underinsurance (UIM) coverage purchased from respondent Milwaukee Insurance Company. The driver of the other car, Michael Grosskreutz, carried $30,000 of liability coverage. Appellant agreed to settle with Grosskreutz's insurer for $20,000, and notified Milwaukee in compliance with the requirements of *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). Milwaukee declined to substitute its draft for Grosskreutz's check.

Richards settled for $20,000, reserving his no-fault and UIM claims against Milwaukee. Milwaukee paid $3,433.36 in no-fault benefits for medical bills, but denied further no-fault claims of $1,367.14. Richards and Milwaukee agreed to join the no-fault and UIM claims for trial, stipulating for these purposes that Grosskreutz was 100 percent at fault. The jury awarded total damages of $34,690.50. Although this amount exceeded Grosskreutz's liability limit of $30,000, the trial court determined that his vehicle was not underinsured because after deducting the no-fault benefits paid or payable to Richards, "actual damages" under Minn.Stat. § 65B.43, subd. 17, were reduced to $29,890. Richards moved for amended findings on his UIM claim, or alternatively, a new trial. These motions were denied.

## ISSUES

1. Is respondent liable for unrecovered amounts, or the "gap" between appellant's settlement with the tortfeasor's insurer and the actual damages exclusive of no-fault payments, in these circumstances?

2. Did the trial court err in its jury instructions regarding the effect of inflation on damages, such that a new trial is required?

## ANALYSIS

### 1.

■ Minn.Stat. § 65B.49, subd. 4a (1988) explains what amounts are recoverable for underinsured motor vehicle insurance. Maximum liability on such policies is

the lesser of the difference between the limit of underinsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or the amount of damages sustained but not recovered.

*Id.* Thus, if a settlement is reached in compliance with *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), and the underinsurer does not cover the settlement, that insurer is liable for the gap, if one is determined. *Broton v. Western Nat'l Mut. Ins. Co.*, 428 N.W.2d 85, 89–90 (Minn.1988) (confirming prospect of underinsurer's liability for gap, construing Minn.Stat. § 65B.49, subd. 4a, as amended in 1985). There is no gap if the damages exclusive of what the insurer pays as no-fault do not exceed the settlement. *See* Minn.Stat. § 65B.49, subd. 3a(4) (1988) (underinsurance recovery not to include basic economic benefits paid or payable). There is also no gap responsibility when the tortfeasor's vehicle is not underinsured according to Minn.Stat. § 65B.43, subd. 17 (1988) (underinsured vehicle one where limits of applicable liability coverage are less than "the amount needed to compensate the insured for actual damages"). *See Royal–Milbank Ins. Co. v. Busse*, 474 N.W.2d 441 (Minn.App.1991).

■ This leads to the gap question presented here: When determining whether the tortfeasor's vehicle is underinsured, does "actual damages" refer to the entire jury verdict, or must this amount be offset by other amounts paid or payable?

While articulated in various ways, the rationale of the trial court and respondent comes to this: the reference in Minn.Stat. 65B.43, subd. 17 to "the amount needed to compensate the insured for actual damages" is stated only to reflect the concept of need. Thus, it is asserted that actual damages are only those damages from which there is no other source of recovery. Notwithstanding the reference in subdivision 17 to the claimant's needs, the statutory concept of "actual damages" is unconditional; it refers to the total damages, not damages reduced by some amount. It does not refer to the sources from which those damages might be paid. We must uphold the language of the statute, and doing so in this instance coincides with our understanding of the following underinsured motorist coverage principles.

1. *Schmidt v. Clothier* established a design to encourage settlements against a tortfeasor that involved casting some risk on the insurer. 338 N.W.2d at 260–61, 264 (Todd, J., concurring and dissenting). Subsequent legislation on this topic is in harmony with *Schmidt*, and it substantially enlarged the insured's responsibility in dealing with settlements. *Broton*, 428 N.W.2d at 89–90. Given this history, we proceed cautiously in responding to an insurer's request to limit its risk of gap coverage, absent clear statutory authority.

2. If no-fault benefits can be deducted prior to identifying whether a vehicle is underinsured, this immediately raises a secondary issue of whether unpaid no-fault benefits can be deducted. It would be inappropriate to determine that all prospective but unpaid no-fault is deductible, because this would permit a deduction even for benefits not paid in bad faith. However, allowing a deduction for only no-fault amounts not paid in good faith would unnecessarily complicate resolution of these issues, inviting legal disputes regarding an insurer's explanation for not paying no-fault.

3. The undue complexity involved in formulating some standard for inclusion and exclusion of various no-fault benefits has another dimension. If the rule is imprecise,

neither the insured nor the insurer can reasonably evaluate proposals for settlement of claims against a tortfeasor for less than the tortfeasor's liability limits. This uncertainty complicates and most likely discourages settlements. In contrast, if the rule is simple, involving comparison of actual damages and insurance limits, both the insured and the insurer know the risk they take in contemplating settlement.

4. Our understanding of the definition of an underinsured vehicle is enhanced by examining the viewpoint of the owner or operator of that vehicle. From that person's perspective, there is too little liability coverage if damages are inflicted in an amount greater than the liability limits.

5. The rule of this case complies with the overall purposes of the no-fault act, that is, to fully compensate, without risk of duplicate coverage. Since the amendment of Minn. Stat. § 65B.49, subd. 4a, in 1985, there has existed in Minnesota a prospect that underinsurance carriers might pay even though the tortfeasor's insurance limits have not been satisfied. *Broton,* 428 N.W.2d at 89–90. The insured is not paid twice, but recovers from a different source. This decision clarifies the nature of that risk, but does not involve duplicate recovery.

Respondent argued below that "actual damages" must be reduced by no-fault benefits paid or payable, because such deductions are provided for in Minn.Stat. § 65B.51, subd. 1 (1988) (recovery from tortfeasor reduced by basic economic benefits paid or payable). Respondent contends that this provision applies to Minn.Stat. § 65B.43, subd. 17, citing cases which state that underinsurance claims are like tort claims. *See, e.g. Employers Mut. Cos. v. Nordstrom,* 495 N.W.2d 855, 856 (Minn.1993).

*Nordstrom,* we observe, deals with the value of an underinsurance claim. *Nordstrom* and Minn.Stat. § 65B.51 are relevant only to determine the sum recoverable by an insured. These authorities do not deal with the definition of underinsured motor vehicle,

or as in this case, the employment of that definition to measure those cases where an insurer faces a risk of paying the gap.[1] *See Broton,* 428 N.W.2d at 89 (issues on amount of underinsurance coverage distinguished from definition of underinsured vehicle).

Also, even if the offset provision of section 65B.51 were employed to calculate appellant's actual damages, an offset under this section is appropriate only for the purpose of preventing over-compensation. *Tuenge v. Konetski,* 320 N.W.2d 420 (Minn.1982) (where basic economic benefits for wage-loss exceed by over $8000 the jury's award for past loss of wages, the excess does not reduce other portions of the jury's award).

We also note that Minn.Stat. § 65B.49, subd. 3a(4) states that the underinsurance recovery has a deduction for no-fault benefits paid or payable. But to repeat, we are not dealing with payment in this case. Rather, the issue here concerns the definition of an underinsured motor vehicle. *Cf. Broton,* 428 N.W.2d at 89 (that a vehicle is underinsured does not address the amount of UIM coverage available).

Respondent also cites Minn.Stat. § 65B.43, subd. 19 (underinsured motorist coverage defined as insurance for those entitled to recover damages from owner or operator of underinsured motor vehicle). Respondent contends that the design of underinsured motorist coverage is to permit recovery of what one is legally entitled to recover, and concludes that we must look to Minn.Stat. § 65B.51 and related concepts to define "actual damages." But subdivision 19 merely identifies a prospective underinsurance claimant, providing that there is no underinsurance coverage where there is no right of some recovery from a tortfeasor. The provision neither states the amount recoverable nor the amount of damages needed to show a vehicle is underinsured.

Finally, respondent contends that the theory of appellant's claim results in problems illustrated by several hypothetical situations involving comparative fault. The problem is overstated. Although there may still be gap

---

1. Dicta in *Nordstrom* speaks of underinsurance cases where entitlement is over the limits. *Nordstrom,* 495 N.W.2d at 858. It is our judgment that this is dicta in the true sense, taken out of context of Minn.Stat. § 65B.43, subd. 17, and not intended to supplant the definition stated in that section.

exposure in comparative fault cases, the amount of recovery would be appropriately reduced for fault.[2]

**2.**

The trial court instructed the jury on present value concepts, so that it would be able to adjust its damage award for inflation. Richards contends these instructions minimized the jury's consideration of inflation, and require a new trial. However, the court's instructions here properly conveyed inflation concepts. Thus, denial of appellant's motion for a new trial was not an abuse of discretion.

## DECISION

The trial court erred in ruling that the tortfeasor's vehicle was not underinsured.

Richards is entitled to recover the difference between the verdict and the $20,000 settlement, less no-fault benefits paid by Milwaukee. The trial court's instructions regarding inflation were appropriate, and its denial of appellant's motion for a new trial on this basis is affirmed.

**Affirmed in part, reversed in part.**

2. In respondent's first example, the claimant settles with the tortfeasor's insurer for $10,000 where the policy limit is $30,000. A jury awards damages of $32,000, but finds the parties 50% at fault. Respondent contends that a rule permitting underinsurance recovery would result in a gap of $22,000, then reduced by 50%, resulting in payment of $11,000 by the underinsurance carrier. The claimant would thus receive a total of $21,000, when the jury verdict assigned damages of only 50% of $32,000, or $16,000.

These calculations erroneously confuse the payment obligation with the definition of an underinsured vehicle. *See Broton*, 428 N.W.2d at

89. After gap responsibility is initially determined, offsets and comparative fault principles should be applied according to Minn.Stat. §§ 65B.41–.71 to calculate the actual recovery. Applying these rules, the claimant in the preceding example would be entitled to 50% of $32,000, or $16,000, less the $10,000 settlement, and the gap recovery is only $6000. Any no-fault benefits paid would be subtracted before the comparative fault calculation (Minn.Stat. § 65B.51, subd. 1) and would further reduce the gap recovery. *See Parr v. Cloutier*, 297 N.W.2d 138, 140 (Minn.1980).