**Ruth WASHINGTON, et al, Respondents,**

v.

**MILBANK INSURANCE COMPANY, Appellant.**

No. C2–95–2627.

Court of Appeals of Minnesota.

July 23, 1996.

James J. Sieben, Bradley H. Ratgen, David G. Moeller & Associates, Minneapolis, for Respondents.

Kenneth P. Gleason, Mahoney, Dougherty and Mahoney, P.A., Minneapolis, for Appellant.

Considered and decided by HUSPENI, P.J., and CRIPPEN and SCHUMACHER, JJ.

## OPINION

CRIPPEN, Judge.

Respondents Ruth and Booker Washington brought a suit against a tortfeasor and then

concluded a settlement of the claim. Appellant Milbank Insurance Company contends that it has the option to refuse consent for the settlement. In this suit, where respondents seek a judgment for arbitration of their underinsurance claims, appellant asserts that the trial court erred, absent appellant's consent for the settlement, in not dismissing the case.

## FACTS

In 1989, respondent Ruth Washington suffered injuries, allegedly severe and permanent, in a two-vehicle accident with tortfeasor Junauld Presley. Respondent's policy with appellant Milbank Insurance Company provided respondent a minimum of $100,000 underinsured motorist (UIM) coverage. The tortfeasor was insured by State Farm Insurance with liability coverage limits of $50,000.

In May 1991, respondents commenced a suit against Presley, claiming damage in excess of $50,000.[1] State Farm paid $20,000 as partial reimbursement to a workers' compensation carrier that paid benefits for Ruth Washington, leaving $30,000 of available liability coverage.

Respondents offered to settle their liability claim against the tortfeasor for $20,000. This settlement offer was accepted by the tortfeasor and State Farm. Because of this arrangement, a judgment of dismissal was entered in March 1994 for the liability suit.

In December 1993, respondents informed appellant of the terms of the settlement agreement with the tortfeasor and State Farm, and offered appellant the opportunity to substitute its $20,000 draft for State Farm's pursuant to *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). Appellant substituted its $20,000 draft, but insisted that the payment be considered a loan, according to an agreement containing the following provisions:

1. [Appellant] herewith tenders to [respondent] the sum of $20,000 as a loan, subject to repayment upon the terms set out below.

2. [Respondent] accepts the loan.

3. [Respondent] will reject the offer of State Farm and Presley for the Naig settlement above and will continue in good faith to vigorously prosecute her claim and action against Presley.

4. [Respondent] will repay the loan out of proceeds of recovery from State Farm and/or Presley by settlement or judgment. Repayment shall be made beginning with the first dollar of any recovery. As to this amount, it is understood and agreed that [appellant's] repayment right is as creditor and not as subrogee. Interest will be paid on the loan at the judgment rate and only to the extent that [respondent] actually recovers prejudgment interest upon her claims against Presley.

5. If after receipt of the loan proceeds herein, [respondent] or her attorneys shall decline to further proceed with the action now pending against Presley, [respondent] agrees that [appellant] may designate attorneys to be substituted to continue prosecution of the action (upon any reasonable compensation arrangement to be determined by [appellant]) and [respondent] will fully cooperate with [appellant] and attorneys retained for her by it.

6. [Respondent] retains the right to settle her claim against Presley at any time subject to *Schmidt v. Clothier* and later case law thereon.

Respondents accepted appellant's draft and agreement and returned State Farm's settlement check. In March 1994, respondents sent appellant an offer of settlement and a formal demand for UIM arbitration consistent with the terms of respondents' automobile insurance policy with appellant. Appellant declined respondents' demand for arbitration, claiming that *Employers Mut.*

---

1. At the time of the accident, Ruth Washington was operating her automobile within the course and scope of her employment, entitling her to worker's compensation benefits for medical bills and wage loss. As a result, she commenced a worker's compensation claim against her employer's insurer, State Fund Insurance. The suit against Presley was premised on a theory of third-party liability.

Cos. v. Nordstrom, 495 N.W.2d 855 (Minn. 1993) required respondents to continue seeking liability benefits from the tortfeasor and State Farm before they were entitled to arbitration of their UIM claim.

In October 1994, respondents served the tortfeasor with process in a new suit that alleged the same causes of action brought in the 1991 suit. In this case, the tortfeasor filed a motion for summary judgment. After a hearing in May 1995, the trial court dismissed respondents' cause of action, finding that (1) a settlement agreement had been reached with the tortfeasor, (2) a notice of the settlement had been sent to appellant, and (3) appellant was the real party in interest. That order was appealed by respondents and affirmed by this court in *Washington v. Presley*, No. C2–95–2093, 1996 WL 162634 (Minn.App. April 9, 1996).

When respondents subsequently commenced this declaratory judgment proceeding against appellant, the insurer moved for dismissal, seeking a decision that directed respondents to proceed with their tort action against the tortfeasor and State Farm until they obtained a judgment for over $30,000, reached a settlement for that amount, or reached a less valuable settlement that was approved by appellant. The trial court refused the proposed dismissal, stating:

> [Respondents] are entitled to the declaratory judgment and decree of this Court declaring that [respondents] are entitled to proceed with arbitration of underinsured motorist claim against [appellant] and [appellant] is directed to arbitrate that claim pursuant to the provisions of its policy.

It is from this order that appellants now appeal.

## ISSUE

Are respondents entitled to proceed with the arbitration of their UIM claim against appellant?

## ANALYSIS

On this appeal, the material facts are undisputed, and we may independently review questions of law decided by the trial court. *Waste Recovery Coop. v. County of Henne-pin*, 475 N.W.2d 892, 894 (Minn.App.1991), *review denied* (Minn. Dec. 9, 1991).

Appellant argues that when appellant substituted its $20,000 draft for the below-policy-limits settlement offered to respondents, it simply made a loan to respondents and that no settlement resulted. But, as the trial court noted, *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), and *Employers Mut. Cos. v. Nordstrom*, 495 N.W.2d 855 (Minn.1993), characterize the relationship between the underinsurer who provides a substituted draft and its insured as a subrogation relationship rather than a credit relationship, contemplating a system in which the underinsurer pursues the underlying tort claim after the UIM claim has been resolved through trial or settlement.

Moreover, if the plaintiffs choose not to go to trial to resolve their tort claim, the plaintiffs determine the terms of settlement. In *Schmidt*, the court noted that an "insured has the right to accept what he or she considers the best settlement available." 338 N.W.2d at 261. The protection for insurers is the option to pursue a subrogation claim or permit settlement. The *Schmidt* court also addressed the topic of exhaustion clauses and found them unlawful, noting that the agreement to exhaust remedies against the tortfeasor defeated the aim of promoting settlement:

> The purposes of the no-fault act * * * include those of easing the burden of litigation and encouraging prompt payment of claims. Enforcement of policy exhaustion clauses would produce results contrary to those purposes. It could serve to force an insured to litigate the claim to final judgment in order to exhaust the policy limits. Litigation expenses would lessen the insured's net recovery, the time involved in litigation would serve to delay payment to the insured, and the litigation itself would unnecessarily burden our court system. Where the best settlement available is less than the defendant's liability limits, the insured should not be forced to forego settlement and go to trial in order to determine the issue of damages. The insured has the right to accept what he or she considers the best settlement available

and to proceed to arbitrate the underinsurance claim for a determination of whether the damages do indeed exceed the tortfeasor's liability limits. Thus, we hold that exhaustion clauses are void as against the policies of the no-fault act. The insured may recover underinsurance benefits where the total damages sustained * * * exceed the limits of the tortfeasor's liability policy even where the insured settles with the tortfeasor for less than the liability limits.

*Id.* at 260–61. *See also Broton v. Western Nat'l Mut. Ins. Co.,* 428 N.W.2d 85, 89 (Minn. 1988) ("An injured claimant does not always receive the full limit of the tortfeasor's liability insurance even though the claimant's damages exceed the policy limits.").

If an insurer has the option to approve or reject a settlement offer, this permits it to demand that the insured exhaust the limits of the tortfeasor's liability policy, the same prerogative created by an exhaustion clause. And appellant's loan transaction is no different than an exhaustion clause. In its demands for dismissal of this case, appellant contended before the trial court and this court that the insureds should be directed to proceed with their tort action against the tortfeasor until they obtained a judgment for over $30,000, reached a settlement for that amount, or reached a less valuable settlement that was approved by appellant. Milbank has never stated its willingness to consider accepting a settlement for less than $30,000.

The *Schmidt* dissent addressed the need to pay the gap between the amount of the settlement and the tortfeasor's policy limits and noted that even if the gap were paid by the UIM insurer, there was sufficient protection for the UIM insurer who received appropriate notice of settlement. *Schmidt,* 338 N.W.2d at 264 (Todd, J., dissenting). The *Broton* court noted that the legislature agreed with the *Schmidt* dissent on this issue. *Broton,* 428 N.W.2d at 89–90 ("the legislature effectively codified the position of the *Schmidt* dissenters, who argued that an insured who communicates the tortfeasor's settlement offer to the UIM insurer should be entitled to recover the gap from the UIM insurer").

■ *Nordstrom* repeatedly addresses a claimant's option for settlement, noting for example:

If claimant does not choose to go to trial, she has the option of making a settlement with the tortfeasor's insurer (who must negotiate in good faith to avoid a bad faith claim), and * * * claimant is not required to absorb the gap [between settlement amount and liability policy limit] if she settles in good faith for less than the liability policy limits.

*Nordstrom,* 495 N.W.2d at 858. To evaluate appellant's plea in this case, we must examine and cannot disregard the reasons why it is unacceptable for a UIM insurer to determine the terms of settlement.

First, *Nordstrom* says that the settlements contemplated by the court are the "best" possible. 495 N.W.2d at 857. Neither *Nordstrom* nor any other appellate decision or legislation has created a process for determining whether a settlement is made in good faith, but *Schmidt* and *Broton* take into account good settlement incentives for insureds. If there is to be a procedure for measuring the best settlement as a prelude to arbitration, it is not one this court has the liberty to inject into this body of law.

Second, it is unfair to permit the UIM insurer the right to determine that the tortfeasor's insurer must bear the burden of defending against the insured's claims. Appellant argues that the major burden of an insurer, whether first or third party, is to provide an adequate legal defense. The prospect of an inadequate settlement poses a danger that the burden shifts from the liability insurer to the UIM insurer. Assessing the justice for this shift of burdens depends on various policy considerations, including the issue of whether incentives are distorted such that an insured would be inclined to facilitate an unfair settlement. But these policy questions were evaluated in *Schmidt*

and *Broton,* and it is not our prerogative to look upon them differently.

## DECISION

The trial court properly ordered declaratory judgment for respondents, entitling them to proceed with arbitration of their underinsured motorist claim against appellant.

**Affirmed.**