Lydia T. SUTHERLAND, Appellant,

v.

**ALLSTATE INSURANCE COMPANY, Respondent.**

No. C7–90–1230.

Court of Appeals of Minnesota.

Dec. 18, 1990.

Review Denied March 15, 1991.

George G. Eck, Dorsey & Whitney, Minneapolis, for appellant.

Louise A. Dovre, Deborah C. Eckland, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent.

Considered and decided by FORSBERG, P.J., CRIPPEN and SCHUMACHER, JJ.

## OPINION

FORSBERG, Judge.

Appellant Lydia T. Sutherland commenced this declaratory judgment action, claiming respondent Allstate Insurance Company wrongfully denied payment of underinsured motorist (UIM) benefits. On cross-motions for summary judgment, the trial court determined appellant did not

give respondent adequate notice as required by *Schmidt v. Clothier;* was not entitled to "stack" UIM benefits; and was not entitled to UIM benefits in this case because the tortfeasor's liability insurance was equal to the UIM liability limits in appellant's policy. The trial court also denied appellant's request for attorney fees.

This appeal is from the grant of summary judgment to respondent. We reverse and remand on the issue of attorney fees.

## FACTS

On October 18, 1985, appellant was injured in Massachusetts when the bicycle she was riding was struck by a truck driven by Armand LaFleur. Appellant tendered a claim to LaFleur's insurer, Fireman's Fund Insurance Company. LaFleur's liability coverage was $100,000.

Appellant's action against LaFleur was handled by Massachusetts counsel who informed appellant's insurer, respondent Allstate, of the accident. Appellant was an insured under her father's automobile policy with respondent covering four separate vehicles.

Respondent paid roughly $13,000 in PIP benefits for medical expenses. Additionally, respondent was informed by appellant's counsel in a letter of June 28, 1988, that:

> I expect to settle her claim with Fireman's Fund Insurance Companies for the policy limit of $100,000. Further, as this office has made clear in the past, I intend to seek additional compensation under the "underinsured" section of my client's automobile insurance policy with Allstate. Consequently, I am now seeking approval from Allstate to settle this claim with Fireman's Fund for the policy limit of $100,000.

On August 19, appellant's counsel forwarded a letter to Fireman's Fund which stated:

> [S]ince you have informed me that there would be a $100,000 offer made if I could document leg length difference, and since I have done so, it does not make sense to unnecessarily increase the parties' litigation cost. I have provided this documentation to you over a month ago and have yet to receive the offer.
>
> Please make this offer as soon as possible so that I may attempt to receive a written consent from Allstate Insurance Company which will enable my client to proceed under Allstate's underinsured provisions. Since it appears that Allstate may be claiming that their policy may not cover my client, I will either submit this issue to the American Arbitration Association and/or file a declaratory judgment action.

A copy of this letter was forwarded to, and received by, the appropriate persons at respondent's offices.

After receiving the above correspondence, respondent informed appellant's attorney by letter dated August 29, it would be denying UIM liability based on the holding of *Broton v. Western Nat'l Mut. Ins. Co.*, 428 N.W.2d 85 (Minn.1988). Appellant settled with Fireman's Fund for $100,000 on October 5. By letter dated October 17, respondent informed appellant's attorneys they would not be requesting subrogation of the settlement for the $13,000 in PIP payments. Appellant, with new counsel, commenced this declaratory judgment action after respondent denied her request for UIM benefits.

## ISSUES

1. Was respondent given sufficient notice of settlement under *Schmidt v. Clothier?*

2. Was appellant precluded from recovering UIM benefits and stacking these benefits under *Broton* and Minn.Stat. § 64B.49 (Supp.1985)?

3. Is appellant entitled to attorney fees under the declaratory judgment act?

## ANALYSIS

■ 1. The trial court held appellant failed to give respondent sufficient notice of settlement as required by *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). That case requires 30 days' written notice be given an underinsurer of any tentative settlement agreement. This notice affords

the underinsurer an opportunity to protect its potential subrogation rights by paying benefits before releasing a tortfeasor. *Id.* at 263. Appellant contends her correspondences of June 28 "seeking approval from Allstate to settle this claim with Fireman's Fund for the policy limits of $100,000," and of August 19 asking for final settlement from Fireman's Fund provided sufficient notice to respondent.

In *American Family Mut. Ins. Co. v. Baumann,* 459 N.W.2d 923 (Minn.1990), the supreme court held a letter far more vague than the one in the present case satisfied the requirement where it notified the insurer

> not only that the insured considers the tortfeasor's liability insurance inadequate to fully compensate her for her injuries and that she will resort to her underinsured motorist coverage to make up the shortfall but also that the insured has made a demand for payment of the tortfeasor's policy limits * * *, making quite clear her intention to settle her action against the tortfeasor if her demand was met.

*Id.* at 925. The court goes on to note "[t]he 30–day notice requirement set out in *Schmidt* was not intended as a technical snare for unwary insureds." *Id.* at 927. We believe this case, involving out-of-state counsel and replete with cat and mouse correspondence from respondent, is directly addressed by *Baumann*'s admonition.

*Baumann* sets out a new notification criteria modifying the *Schmidt* notice requirement:

> Henceforth, * * * [t]he notice shall identify the insured, the tortfeasor and the tortfeasor's insurer and shall disclose the limits of the tortfeasor's automobile liability insurance and the agreed upon amount of the settlement.

*Id.* Notice sufficient to satisfy these requirements was clearly provided to respondent. In light of *Baumann,* we must conclude the trial court erred in deciding respondent was provided insufficient notice of appellant's impending settlement.

■ 2. The trial court further found appellant was not entitled to UIM benefits

due to 1985 changes in the No–Fault Act. The court determined first, appellant is unable to "stack" her UIM benefits because the legislature changed the existing law to provide:

> Regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy, or premiums paid, in no event shall the limit of liability for uninsured and underinsured motorist coverages for two or more motor vehicles be added together to determine the limit of insurance coverage available to an injured person for any one accident.

Minn.Stat. § 65B.49, subd. 3a(6) (Supp. 1985).

Second, the trial court held appellant was unable to recover UIM benefits because another 1985 change in the law provides:

> With respect to underinsured motor vehicles, the maximum liability of an insurer is the lesser of the difference between the limit of underinsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or the amount of damages sustained but not recovered.

Minn.Stat. § 65B.49, subd. 4a (Supp.1985). In this case, the trial court reasoned since the tortfeasor's liability insurance was $100,000, and the UIM coverage was also $100,000, the difference between the policies was zero, thus precluding recovery.

Prior to the amendment to section 65B.49, subd. 3a(6), UIM coverage was permitted to be stacked. *Holman v. All Nation Ins. Co.,* 288 N.W.2d 244, 251 (Minn. 1980). Likewise, prior to the 1985 amendment to section 65B.49, subd. 4a, UIM coverage was calculated on an "add-on" basis rather than a "difference in the limits" basis. The "add-on" calculation allowed UIM benefits to be recovered inasmuch as the damages exceed the tortfeasor's available liability coverage. *Broton,* 428 N.W.2d at 88–89.

The effective date of section 65B.49, subd. 3a(6) is

October 1, 1985, and applies to insurance policies providing benefits for injuries arising out of the maintenance or use of a motor vehicle or motorcycle that are executed, issued, issued for delivery, delivered, continued, or renewed in this state after September 30, 1985.

1985 Minn. Laws 1st Sp.Sess. ch. 13, § 378. The language of the law making effective section 65.49, subd. 4a is identical except that the effective date is July 1, 1985. 1985 Minn. Laws, ch. 309, § 14.

The issue before this court is whether these 1985 amendments apply to the policy in question. In large measure, this question comes down to whether the policy was a renewal or an extension or continuation of a preexisting policy. In considering this question, we are directed that

> Description of the action depends on whether the policy acted upon is a new policy or an existing policy. New policies "are executed, issued, issued for delivery, [or] delivered"; existing policies "are * * * continued, or renewed" at the end of the policy period. Whether the payment of a renewal premium results in the extension or continuation of the original policy or the formation of a new and independent contract depends primarily on the intention of the parties as ascertained from the policy itself.

*AMCO Ins. Co. v. Lang,* 420 N.W.2d 895, 898 (Minn.1988).

The policy in question makes no reference to any provision for renewal or continuation. The policy specifically provides "[y]our policy applies only during the premium period. * * * The premium period is shown on the declarations page." The declarations page shows the policy was issued on October 28, 1985. It states the policy period "BEGINS ON OCTOBER 1, 1985 WITH NO FIXED DATE OF EXPIRATION." Respondent's chosen language shows an intent to issue a new policy each time a new declarations sheet is delivered. The policy period is said to "begin," not renew or continue, as of October 1. Likewise, by using the term "issued" on its declaration sheet, respondent must abide by the judicially determined definition of

this term as referring to new policies. *See Minnesota Wood Specialties, Inc. v. Mattson,* 274 N.W.2d 116, 119 (Minn.1978).

The trial court determined the policy "clearly states that the plaintiff's policy period began October 1, 1985. Thus, the 1985 amendments apply to this policy and stacking of UIM benefits is prohibited." This misreads the legislation making the amendments effective as of the date "executed, issued, issued for delivery, [or] delivered." The policy in effect before the October 28 date of issue was issued June 7, 1985, and states it "BEGINS ON APRIL 1, 1985 *WITH NO FIXED DATE OF EXPIRATION.*" (Emphasis added.) From the language of the policy, we are convinced the date at which the policy is said to begin is irrelevant.

We believe the language indicating there is "no fixed date of expiration" on these policies can be reasonably read to infer a policy shall remain in effect until a new policy is issued or the effective policy is cancelled. This is consistent with the policy contract which contains specific provisions for cancellation and references the effective dates of the policy through the declarations sheet on which the "no fixed date of expiration" language appears.

Respondent may argue the "no fixed date of expiration" language merely provides notice that the next premium period will be considered a renewal or continuation. At best, that would render the declarations sheet facially ambiguous in light of the language specifically referring to the date the policy was issued. This does not improve respondent's position. "When language of an insurance policy is ambiguous or susceptible of two meanings, it must be given the meaning which is favorable to the finding of insurance coverage." *Nordby v. Atlantic Mut. Ins. Co.,* 329 N.W.2d 820, 822 (Minn.1983).

Based upon the record before us, we find the policy covering appellant on the date of the October 18, 1985 accident was issued June 7, 1985, and was in effect until issuance of the next policy on October 28, 1985. The effective dates of section 65B.49, subds. 3a(6) and 4a for purposes of

this policy was October 28, 1985. Since the policy covering appellant included four separate vehicles, the UIM benefits available to appellant are allowably stacked in the amount of $400,000. Likewise, the UIM benefits are to be calculated under the pre-*Broton* "add-on" basis since that legislation also became effective during the prior policy period.

3. The trial court denied appellant's request for attorney fees. The court determined "as there is no declaratory judgment in this case, attorney's fees cannot be awarded." Since we reverse the trial court on the declaratory judgment, it is appropriate to remand for a determination of attorney fees.

This court has held that, even absent any showing of bad faith on the part of an insurer, attorney fees are properly awarded under Minn.Stat. § 555.08 (1990) when the insured successfully sues for a declaration of rights under her policy. *Wondra v.* *American Family Ins. Group,* 432 N.W.2d 455, 460 (Minn.App.1988), *pet. for rev. denied* (Minn. Jan. 25, 1989). Fees are awarded "because an insurance contract is intended to relieve the insured of the financial burden of litigation and because the declaratory judgment costs are considered consequential damages." *Id.* at 460 (citing *Kline v. Hanover Ins. Co.,* 368 N.W.2d 381, 383 (Minn.App.1985)). We find these policy goals are properly served in this case by an award of attorney fees to appellant.

## DECISION

Reversed and remanded on the issue of attorney fees.