# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

Nos. 09-3002/3072

———————

Pioneer Industries, Inc.,       *
      *
       Appellant/Cross-Appellee,   *
      *   Appeal from the United States
    v.        *   District Court for the
      *   District of Minnesota.
Hartford Fire Insurance Company,   *
      *
       Appellee/Cross-Appellant.   *

———————

Submitted: May 11, 2010
Filed: April 8, 2011

———————

Before BYE, MELLOY, and SHEPHERD, Circuit Judges.

———————

BYE, Circuit Judge.

These appeals involve an insurance coverage dispute over commercial crime insurance Hartford Fire Insurance Company issued to Pioneer Industries. After Pioneer's chief financial officer (CFO) died, Pioneer discovered he had embezzled more than $500,000 from the company during the eleven years prior to his death. Pioneer sued Hartford after the latter refused to pay a claim for the loss. The district court[1] concluded Hartford was entitled to rescind the policy covering the loss because the CFO made material misrepresentations in Pioneer's insurance applications, and the

———————

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

misrepresentations increased Hartford's risk of loss. Pioneer appeals that decision. Hartford cross-appeals the district court's determination that Pioneer was not obligated to reimburse Hartford for a separate claim Hartford paid in 2000. We affirm the district court in both appeals.

I

Pioneer Industries is a paper recycling company. Its owner, James Chafoulias, also owns four related companies, including the Batliner Paper Stock Company (Batliner). We refer collectively to these entities as Pioneer. Clinton Harlander served as Pioneer's CFO from 1985 until his death in 2006. Harlander's duties included completing insurance applications. Between 1987 and 2004, he completed six different applications for commercial crime insurance from Hartford, including both original policy applications and renewal applications. In the applications, Harlander made representations claiming Pioneer accounts at all locations were independently audited on an annual basis; he also made representations as to internal controls Pioneer had purportedly implemented, such as having bank accounts reconciled by someone not authorized to deposit to or withdraw from the accounts, and requiring countersignatures on checks. While Harlander's representations were true as to some Pioneer locations or accounts, they were not true as to all locations or accounts within Pioneer.

In truth, Harlander had sole signature authority over Pioneer's savings account and several of Pioneer's checking accounts. He also reconciled the accounts. Harlander abused his ability to control account processes from beginning to end (i.e., request a check, approve a voucher and sign a check) to write checks payable to himself, to withdraw cash for himself from the savings account, and to endorse checks written by one Pioneer entity to another entity for deposit into his personal account or for deposit into the savings account. Sometimes when checks were deposited to Pioneer's savings account, Harlander took the funds as cash. Harlander also used

Pioneer's credit card for personal expenses, insured his personal automobile under Pioneer's automobile insurance policy, paid himself for unused vacation in contravention of the company's "use it or lose it" vacation policy, and gave himself unauthorized raises.

Shortly after Harlander died on May 28, 2006, Pioneer discovered he had misappropriated $549,859.26 from the company between 1995 and 2006. Pioneer submitted a claim to Hartford for the loss stemming from Harlander's misappropriation. Hartford refused to pay the claim. On November 30, 2006, Hartford told Pioneer it was rescinding its insurance coverage based upon the ground that Pioneer made material misrepresentations in the applications the company had submitted between 1987 and 2004. Hartford further demanded Pioneer reimburse Hartford for a $500,000 loss it paid in 2000 for inventory theft which occurred at a Batliner facility (the Batliner claim). Hartford included a check for $29,684, the full amount of all premiums Pioneer had paid under policy number 41BDDAH7179 (the 7179 Policy), which was initially issued by Hartford to Pioneer on April 1, 2000.

Pioneer refused the returned premiums and filed suit against Hartford in Minnesota state court alleging breach of contract based on Hartford's denial of coverage. Hartford removed the suit to federal district court and counterclaimed for a declaration as to it being entitled to rescind the commercial crime insurance policies it had issued to Pioneer between 1987 and 2000. Hartford's counterclaim also sought reimbursement of the $500,000 it had paid on the Batliner claim in 2000.

Hartford moved for summary judgment on the breach-of-contract claim brought against it, as well as its counterclaim seeking reimbursement of the Batliner claim. The district court granted Hartford's motion in part. The district court concluded Pioneer made material misrepresentations in its insurance applications which increased Hartford's risk of loss, and Hartford was entitled to rescind the policy which would have covered Harlander's misappropriation claim. The district court denied

Hartford's motion as it related to the counterclaim for the $500,000 paid on the Batliner claim in 2000.

As relevant to the counterclaim, Hartford had issued Pioneer a "Notice of Nonrenewal" on January 24, 2003, indicating Hartford was exercising its right to terminate the 7179 Policy effective April 1, 2003. Thereafter Pioneer submitted a full application for insurance. After reviewing the full application, Hartford elected to continue providing insurance coverage to Pioneer. The district court concluded the nonrenewal notice resulted in a termination of the 7179 policy effective April 1, 2003, and the formation of a new contract of insurance effective as of that same date. The district court held that while Hartford had demonstrated its right to rescind its contract as to non-lapsed policies (back to April 1, 2003), it had not demonstrated as a matter of law it was further entitled to rescind policies which had already lapsed (any policies in effect prior to April 1, 2003).

The district court withheld entry of final judgment to give Hartford the opportunity to file a motion providing authority for its claim that it was not only entitled to rescind coverage back to April 2003, but further entitled to rescind policies which may have already lapsed, including the policy in effect in 2000 when the Batliner claim was paid. The time period set by the district court for bringing such a motion passed without Hartford filing a motion; as a consequence the district court dismissed Hartford's counterclaim. Thereafter both parties filed timely appeals.

On appeal, Pioneer challenges the district court's summary judgment in favor of Hartford on Pioneer's breach-of-contract claim. Pioneer contends Hartford failed to show material misrepresentations were made in the applications for insurance which increased the risk of loss. In its cross appeal, Hartford contends the district court erred when it determined the January 2003 "Notice of Nonrenewal" resulted in the formation of a new contract of insurance, and thus erred when it dismissed the counterclaim for reimbursement of the Batliner claim.

We review de novo both the district court's grant of summary judgment and its interpretation of state insurance law. Country Life Ins. Co. v. Marks, 592 F.3d 896, 899 (8th Cir. 2010).

We first address Pioneer's contention the district court erred in granting Hartford's motion for summary judgment. The district court granted summary judgment on the ground Pioneer made material misrepresentations in its insurance applications which increased Hartford's risk of loss. Under Minnesota law, an insurer may rescind or avoid a policy if a misrepresentation on the application for insurance increases the risk of loss to the insurer or is made with intent to deceive or defraud. See Minn. Stat. § 60A.08(9) (providing in relevant part "[n]o oral or written misrepresentation made by the assured . . . in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy . . . unless the matter misrepresented increases the risk of loss."). The insurer has the burden of proving a misrepresentation increased the risk of loss. Quintana v. Allstate Ins. Co., 378 N.W.2d 40, 45 (Minn. Ct. App. 1985).

Pioneer first argues Minn. Stat. § 60A.08(9) does not govern misrepresentations made in *applications* for insurance because the statute does not refer to an "application," but only the "negotiation of insurance." Pioneer points out another subdivision of the same statute, Minn. Stat. § 60A.08(11) (governing directors and officers liability coverage), refers to both "negotiation" and "application" to indicate when a misrepresentation or omission defeats insurance coverage. Pioneer argues the absence of the term "application" from Minn. Stat. § 60A.08(9), and its presence in Minn. Stat. § 60A.08(11), indicates the term must have a different meaning than "negotiation." As a result, Pioneer contends misrepresentations made in applications for insurance do not trigger Minn. Stat. § 60A.08(9).

As the district court observed, however, the Minnesota courts have routinely and consistently applied Minn. Stat. § 60A.08(9), and its predecessor statute, Minn. Stat. § 60.85, to situations involving misrepresentations made in applications for insurance.[2] We are obligated to follow these decisions. See Minn. Supply Co. v.

---

[2]See Price v. Standard Life & Acc. Ins. Co., 95 N.W.1118, 1119 (Minn. 1903) (analyzing whether misrepresentations made in life insurance application materially increased risk of loss); Mack v. Pac. Mut. Life Ins. Co., 208 N.W. 410, 412 (Minn. 1926) (holding a material misrepresentation in the application will avoid the policy if the misrepresentation increases the risk of loss); Schaedler v. New York Life Ins. Co., 276 N.W. 235, 239 (Minn. 1937) (holding insurer had defense to payment if policy was obtained by false statements in the original application); Dahlke v. Metro. Life Ins. Co., 15 N.W.2d 524, 527 (Minn. 1944) (holding, as "well established," that policy is avoided due to a material misrepresentation in an application for insurance); Nielson v. Mut. Serv. Cas. Ins. Co., 67 N.W.2d 457, 459 (Minn. 1954) (analyzing alleged misrepresentations made on an application for insurance, and holding that the "applicable and controlling statute" was § 60.85 (the precursor to Minn. Stat. § 60A.08(9)); Preferred Risk Mut. Ins. Co. v. Anderson, 152 N.W.2d 476 (Minn. 1967) (analyzing information submitted with application for insurance under statutory standard set forth in § 60.85); W. World Ins. Co. v. Hall, 353 N.W.2d 221, 223-24 (Minn. Ct. App. 1984) (addressing whether misrepresentations made in application for insurance were material under § 60A.08(9)); Proprietors Ins. Co. v. Nw. Nat'l Bank, 374 N.W.2d 772, 775-76 (Minn. Ct. App. 1985) (applying standard set forth in statute to misrepresentations made in application for insurance); Quintana v. Allstate Ins. Co., 378 N.W.2d at 45 (addressing misrepresentations in application for insurance under context of § 60A.08(9)); Born v. Medico Life Ins. Co., 428 N.W.2d 585, 590 (Minn. Ct. App. 1988) (allowing rescission due to misrepresentation on application for insurance under § 60A.08(9)); Kersten v. Minn. Mut. Life Ins. Co., 608 N.W.2d 869, 875 (Minn. 2000) (citing § 60A.08(9) in recognizing that general insurance law in Minnesota permits "insurers to void policies for misstatements in the application if such misstatements are made 'with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss'"); In re Silicone Implant Ins. Coverage Litig., 652 N.W.2d 46, 77-78 (Minn. Ct. App. 2002), rev'd in part on other grounds, 667 N.W.2d 405 (Minn. 2003) (addressing insurer's burden of proof and scope of statutory standard under § 60A.08(9) in light of misrepresentations made in applications).

Raymond Corp., 472 F.3d 524, 534 (8th Cir. 2006) (noting that when interpreting state law, the Eighth Circuit is bound by the decisions of the state's highest court). Furthermore, the Minnesota Legislature, despite recodifications to the statute after the Minnesota Supreme Court applied the statute to applications for insurance, has not disturbed the state courts' interpretation or seen it necessary to include a specific reference to "application" within the statute. Thus, the statute should be read as referring to "applications" notwithstanding the absence of the term therein. See Minn. Stat. § 645.17(4) (providing that "when a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language"). Applying well-settled Minnesota law, we conclude Minn. Stat. § 60A.08(9) applies to misrepresentations made in applications for insurance.

Pioneer next claims Hartford failed to demonstrate Harlander actually made any material misrepresentations in the applications where the alleged misrepresentations were made in response to ambiguous questions. Pioneer's argument primarily focuses upon the fact Pioneer consisted of many divisions and related companies under common ownership, some of which had different accounting methods or different internal controls. Pioneer argues the applications' simple "yes" or "no" questions failed to allow Pioneer to differentiate between which of its entities may have had internal controls and which did not. We disagree.

If any of Pioneer's respective entities lacked the internal controls or auditing processes asked about in the applications, Pioneer's answers should have disclosed the absence of those internal controls or auditing processes even if *some* of Pioneer's entities had such measures in place. For example, some of the applications asked if bank accounts were "reconciled by someone not authorized to deposit or withdraw" from the accounts. We agree with Hartford that if *any* Pioneer employee who was authorized to deposit or withdraw from an account was also the person who reconciled that account, the correct answer to the question would be "no" even if *some* accounts

were reconciled by someone not authorized to deposit or withdraw. Similarly, one application asked if financial statements were audited annually by an independent CPA and if "all subsidiaries and locations, or similarly controlled and operated companies, [were] included in the audit?" Even if *some* of Pioneer's subdivisions or related companies were independently audited, the correct answer to such question would be "no" if *any* subdivisions or related companies were not independently audited. We therefore reject Pioneer's contention that the alleged ambiguity of the questions somehow eviscerated the materiality of the misrepresentations which were made.

Next, Pioneer contends, even assuming Hartford proved material misrepresentations were made in the policy applications, it was Harlander who made the misrepresentations, not Pioneer. Pioneer argues such misrepresentations were made *ultra vires* and outside the scope of Harlander's employment. We disagree. Harlander was specifically authorized to purchase Pioneer's insurance, and thus any misrepresentations he made were attributable to Pioneer. See Myzel v. Fields, 386 F.2d 718, 738 (8th Cir. 1967) ("[A] principal is liable for the deceit of his agent committed in the very business he was appointed to carry out. This is true even though the latter's specific conduct was carried on without knowledge of the principal.").

Finally, Pioneer contends the district court applied the wrong legal standard in determining whether Hartford was entitled to rescind its policy. Pioneer contends the correct legal standard requires an insurer to prove, but for the misrepresentations, it would not have issued a policy. Under a "but for" standard, Pioneer argues there are genuine factual issues about whether Hartford would still have written the policy, but simply "treated" the additional risk in determining whether to increase premiums, include additional exclusions, or cover only certain of Pioneer's subdivisions or related companies (i.e., the ones with internal controls in place).

The district court determined Minnesota law does not impose a "but for" requirement, and therefore Hartford did not have to prove it would not have issued a policy at all but for the misrepresentations. In the alternative, the district court determined Hartford proved it would not have issued the policies had it known the truth. Because we conclude the district court applied the correct legal standard, it is unnecessary to address whether genuine issues of material fact foreclosed summary judgment.

Minn. Stat. § 60A.08(9) does not contain a "but for" requirement; it expressly provides a policy may be voided if a "matter misrepresented increases the risk of loss." Thus, if Hartford can prove a misrepresentation increased its risk of loss, it is entitled to avoid the policy irrespective of whether or not it would have issued the policy. The standard applied by the district court was whether Hartford could show there was "a greater likelihood that the insurer will be liable in the future than there would have been if the facts were as the insured stated them to be." In re Silicone Implant Ins. Coverage Litig., 652 N.W.2d at 77 (explaining what must be proven to establish an increase in the risk of loss); see also Howard v. Aid Ass'n for Lutherans, 272 N.W.2d 910, 912 (Minn. 1978) ("Neither decisional nor statutory authority in this state requires more than that an insured willfully misstate necessary information or intentionally mislead the insurer into issuing a policy for coverage" in order to void the coverage.). An increase in the risk of loss is all that is required in order to trigger application of Minn. Stat. § 60A.08(9); an insurer is not required to further prove that it would never have issued the policy but for the misrepresentations.

We conclude Hartford satisfied its burden of proving Harlander misrepresented Pioneer's internal accounting safeguards when applying for insurance, and such misrepresentations increased Hartford's risk of loss. In every application Pioneer submitted to Hartford, misrepresentations were made about the internal controls and audit procedures meant to prevent internal theft or embezzlement. Such misrepresentations are material to coverage for commercial crime insurance, and

directly related to the loss involved here – a CFO's repeated embezzlement which occurred in part because of the absence of the internal controls and auditing procedures Pioneer represented were in place. The district court did not err in concluding Hartford was entitled to rescind the most recent non-lapsed policy due to misrepresentations made in the applications.

III

We next address Hartford's cross appeal. Hartford contends the district court erred when it concluded the January 2003 "Notice of Nonrenewal" resulted in the formation of a new contract of insurance effective April 1, 2003. Hartford argues the nonrenewal notice did not terminate the 7179 Policy, and thus its right to rescind dates back to April 1, 2000, the date the 7179 Policy first became effective. As a result, Hartford contends it is entitled to be reimbursed for the Batliner claim which it paid after April 2000 but before April 2003.

The nonrenewal notice provides in relevant part:

[P]lease be advised that Hartford Fire Insurance Company, as Underwriter, is exercising its right to non-renew this policy in accordance with the provisions of Section VI, GENERAL CONDITIONS, Section C, CANCELLATION OR NONRENEWAL OF POLICY. This termination shall be effective as of April 1, 2003.

Although Hartford is electing to non-renew the above policy, upon receipt and review of all required underwriting information, the Underwriter, at its sole discretion, may offer to replace the above[-]referenced policy with certain changes in the terms and conditions. Changes may include but are not limited to an increase in premiums, an increase in deductibles, a reduction in limits, the addition of policy conditions, and/or an elimination of certain types of coverage.

Appellant's App'x at 102.

-10-

The district court determined the nonrenewal notice terminated the existing 7179 policy on April 1, 2003, consistent with the notice's express statement that Hartford was "electing to non-renew the above policy." In part, the district court focused on Hartford's use of the word "replace" rather than "renew" when referring to its offer to continue to provide coverage to Pioneer: "The term 'replace' in conjunction with the identification of the effective date of termination of the 7179 Policy indicates Hartford's intent that the 7179 Policy end on April 1, 2003, and that any commercial crime insurance policy effective after that date be a new and independent contract." Pioneer Indus., Inc. v. Hartford Fire Ins. Co., Civil No. 07-4421, 2009 WL 2187379, at *13 (D. Minn. July 22, 2009). The district court also noted "that the scope of the changes contemplated by Hartford in the January 2003 letter far exceeded the annual re-computation of the premium contemplated in the declarations of the 7179 Policy." Id. Finally, the district court found it significant that, after terminating the existing policy by giving the proper notice in accordance with the policy's cancellation terms, Hartford did not send Pioneer a limited renewal application to complete, but instead required Pioneer to apply anew by completing a full application. Id.

Hartford asks us to ignore the express statements of its intent to terminate the existing policy, as well as its direct reference to and compliance with the cancellation/nonrenewal conditions of the policy. It also asks us to disregard the fact that its subsequent conduct – requiring Pioneer to complete a new, full application – was consistent with an intent to terminate the existing policy. Hartford instead suggests we should view as dispositive its failure to deliver a new declarations sheet to Pioneer after April 1, 2003. According to Hartford, its failure to deliver a new declarations sheet meant the policy providing coverage to Pioneer after April 1, 2003 contained the same policy number (7179) and still said the policy was in effect "from April 1, 2000 until cancelled." To support its claim as to the failure to deliver a new declarations sheet being a dispositive, Hartford cites Sutherland v. Allstate Insurance Co., 464 N.W.2d 150, 153 (Minn. Ct. App. 1990), which held the use of language

-11-

stating a policy has no fixed date of expiration "shows an intent to issue a new policy each time a new declarations sheet is delivered."

Sutherland addressed the applicability of an amendment to the Minnesota No-Fault Act which applied to policies "executed, issued, issued for delivery, delivered, continued, or renewed in [Minnesota] after September 30, 1985." 464 N.W.2d at 153 (citing 1985 Minn. Laws 1st Sp. Sess. ch. 13, § 378). The question was which of two policies covered an accident occurring on October 18, 1985 – the policy the insurer issued on June 7, 1985 (prior to the amendment's effective date), or the policy issued on October 28, 1985 (after the amendment's effective date). The dispute arose from the fact the "issue" date on the declarations sheet of both policies conflicted with the effective date stated on the respective declarations sheets. The policy issued on June 7 said the policy period "BEGINS ON APRIL 1, 1985 WITH NO FIXED DATE OF EXPIRATION," while the policy issued on October 28 said the policy period "BEGINS ON OCTOBER 1, 1985 WITH NO FIXED DATE OF EXPIRATION." Id. Thus, if the "issue" date was dispositive, the policy issued on June 7 was still in effect on the date of the accident on October 18, but if the purported effective date stated on the declarations sheet was dispositive, the policy issued *after* the accident on October 28 would have covered the accident because that policy said it "begins on October 1, 1985."

In resolving the conflict between the policies' issue dates and purported effective dates, the Minnesota Court of Appeals chose the "issue" date, stating "the date at which the policy is said to begin is irrelevant." Id. The court said the insurer's choice to use the language "NO FIXED DATE OF EXPIRATION" in the respective policies "shows an intent to issue a new policy each time a new declarations sheet is delivered." Id. "We believe the language indicating there is 'no fixed date of expiration' on these policies can be reasonably read to infer a policy shall remain in effect until a new policy is issued or the effective policy is cancelled." Id.

-12-

Significantly, the court specifically rejected the notion as to the insurer's use of the '"no fixed date of expiration' language merely provides notice that the next premium period will be considered a renewal or continuation." Id. The court said there would still be an ambiguity between the policies' purported effective and issue dates, and the ambiguity would have to be resolved in favor of the insured rather than the insurer. Id. (citing Nordby v. Atlantic Mut. Ins. Co., 329 N.W.2d 820, 822 (Minn. 1983) ("When language of an insurance policy is ambiguous or susceptible of two meanings, it must be given the meaning which is favorable to the finding of insurance coverage.")).

Unlike Sutherland, this case does not involve a dispute arising from a conflict between a policy's issue date and purported effective date. This case involves a dispute about whether a policy was *cancelled* pursuant to a nonrenewal notice expressly stating an insurer's intent to cancel in accord with the policy's specific provisions for cancellation, or merely *renewed* because a new declarations sheet was never issued and the existing declarations sheet had no fixed date of expiration. Neither Sutherland, nor any of the other cases cited by Hartford, address the situation we must resolve here.

Hartford asks us to interpret Sutherland to mean an insurer's failure to issue a new declarations sheet conclusively determines a policy is renewed, rather than cancelled and replaced with a new policy, whenever the declarations sheet refers to a policy period with no fixed date of expiration, notwithstanding an express nonrenewal notice stating otherwise. We decline to read Sutherland so broadly. Indeed, we believe Sutherland makes two points which compel us to conclude the opposite.

First, Sutherland did not view the "no fixed date of expiration" language used by the insurer as a direct expression of the insured's intent, but merely as evidence from which a finding of intent could be inferred. See id. at 153 ("We believe the

language indicating there is 'no fixed date of expiration' on these policies can be reasonably read to *infer* a policy shall remain in effect until a new policy is issued or the effective policy is cancelled.") (Emphasis added). Here, the nonrenewal notice contained a direct statement of the insured's intent to terminate the policy effective April 1, 2003. When we compare this direct statement of intent against the mere inference created by the lack of a fixed expiration date in the declarations sheet, we are inclined to credit the former because we believe Minnesota law gives more weight to direct expressions of intent than to inferential evidence. See Mut. Serv. Cas. Ins. Co. v. League of Minn. Cities Ins. Trust, 659 N.W.2d 755, 760 (Minn. 2003) (discussing this concept in the legislative context).

Second, Hartford essentially wants us to conclude that its use of language containing no fixed date of expiration in the declarations sheet meant any replacement policy would necessarily be viewed as a renewal or continuation – rather than a cancellation and replacement – unless and until a new declarations sheet was issued. We read Sutherland as specifically rejecting the argument that the use of no fixed date of expiration in a declarations sheet "merely provides notice that the next premium period will be considered a renewal or continuation." 464 N.W.2d at 153. Instead, under the circumstances involved in Sutherland, the court found such language merely created an ambiguity "in light of the language specifically referring to the date the policy was issued." Id. The court then went on to resolve the ambiguity in favor of the insured in accord with well-accepted principles of insurance law. See id.

In this case, we are faced with a conflict between a declarations sheet which says the 7179 policy is in effect from "April 1, 2000 until cancelled" and a nonrenewal notice (sent in compliance with the policy's specific provisions on cancellation/nonrenewal conditions) which says the policy is terminated "as of April 1, 2003." We believe, at best, the nonrenewal notice renders the declarations sheet ambiguous, and, in accord with well-accepted principles of insurance law, we are required to resolve the ambiguity in favor of Pioneer.

## IV

We affirm the judgment of the district court in all respects.

_____