# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 15-1097

———————————————

Country Mutual Insurance Company

*Plaintiff - Appellee*

v.

Eric J. Orloske; Destiny A. Denton, as trustee for the heirs and next of kin of Brian S. Orloske

*Defendants - Appellants*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: November 18, 2015
Filed: April 11, 2016

——————————

Before SMITH, BYE, and BENTON, Circuit Judges.

——————————

SMITH, Circuit Judge.

Eric Orloske shot his brother, Brian, to death after Eric tripped and fell down the stairs in his home while holding a loaded shotgun. Destiny A. Denton, the trustee for Brian's next of kin, sued Eric for the wrongful death of Brian. Country Mutual Insurance Company ("Country Mutual") filed this declaratory judgment action against

Eric and Denton (collectively, "Trustee") in the district court[1] to establish that its homeowner's policy, which covered Eric's home, did not provide coverage for Brian's death. The district court granted summary judgment to Country Mutual. The court concluded that there was no coverage because Eric had pleaded guilty to manslaughter for Brian's death and the insurance policy excluded coverage for criminal acts. The Trustee appeals, arguing that Minnesota's reasonable-expectations doctrine should invalidate the criminal-acts provision in the policy. We affirm.

## I. *Background*

We review the facts in the light most favorable to the Trustee as the nonmoving party. *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009). On the night of the shooting, Eric and Brian spent the evening together in Eric's home drinking heavily. Due to intoxication, Brian's behavior became increasingly rowdy and unreasonable. Eric's efforts to get Brian to calm down or leave failed. Eric made the unfortunate decision to retrieve his shotgun from the upstairs bedroom and brandish it to scare Brian into compliance. Eric did not know that the gun was loaded. As Eric proceeded down the stairs with the gun, he tripped and the gun discharged, killing Brian.

Eric pleaded guilty to second degree manslaughter for Brian's death. Denton sought wrongful-death damages in a tort action against Eric on behalf of Brian's next of kin, and she obtained an arbitration award against Eric. Protectively, Country Mutual filed this declaratory judgment action to establish that its policy provided no coverage for Eric's liability in the death of his brother. Country Mutual denied coverage on the basis of the criminal-acts exclusion in Eric's policy. That exclusion provides the following:

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

9. *Criminal Acts*

   "Bodily injury" or "property damage" arising from any criminal act. Criminal act means any act or omission which is criminal in nature or for which a penal statute or ordinance permits or requires any term of imprisonment or sentence of public service duties. This exclusion applies regardless of whether any "insured" is actually charged with or convicted of a crime and regardless of whether any "insured" subjectively intended the "bodily injury" or "property damage" for which a claim is made[.]

Country Mutual moved for summary judgment. In response, the Trustee argued that Minnesota's reasonable-expectations doctrine should apply and render the criminal-acts exclusion unenforceable on the instant facts. The district court concluded that the reasonable-expectations doctrine did not apply in this case "because the criminal-acts exclusion is neither ambiguous nor obscure." Accordingly, the court granted summary judgment to Country Mutual. The Trustee appeals. We have jurisdiction to review this final judgment of the district court pursuant to 28 U.S.C. § 1291.

## II. *Discussion*

The Trustee argues that the district court erred in concluding that Minnesota's reasonable-expectations doctrine is limited to preventing enforcement of ambiguous or obscure provisions. We review de novo the district court's interpretation of state insurance law and grant of summary judgment. *Pioneer Indus., Inc. v. Hartford Fire Ins. Co.*, 639 F.3d 461, 465 (8th Cir. 2011).

In *Carlson v. Allstate Insurance Co.*, 749 N.W.2d 41 (Minn. 2008), the Minnesota Supreme Court provided guidance for the operation of Minnesota's reasonable-expectations doctrine.[2] In *Carlson*, the court reviewed three decades of

---

[2]The Trustee asks us to apply *Tower Insurance Co. v. Judge*, 840 F. Supp. 679 (D. Minn. 1993), which has factual similarities to the instant case. As a federal district

Minnesota caselaw applying the reasonable-expectations doctrine. *See id.* at 47–49. The court began with its opinion in *Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271 (Minn. 1985). *Id*. at 47. In that case, the court "did not permit the insurer to enforce a definition that excluded coverage," *id*., reasoning that "'no one purchasing something called burglary insurance would expect coverage to exclude skilled burglaries that leave no visible marks of forcible entry or exit.'" *Id.* (quoting *Atwater*, 366 N.W.2d at 276). In concluding its discussion of *Atwater*, the court summarized the reasonable-expectations doctrine as "imposing burdens on both insurer and insured: the insurer must communicate coverage and exclusions accurately and clearly, and the insured's expectations must be reasonable under the circumstances." *Id.* at 48 (citing *Atwater*, 366 N.W.2d at 278). Next, the court reviewed its opinion in *Board of Regents of the University of Minnesota v. Royal Insurance Co. of America*, 517 N.W.2d 888 (Minn. 1994), noting that it "limits *Atwater*, if not to its specific facts, at least to circumstances where the exclusion from coverage was unreasonably hidden." *Id*. at 49 (citations omitted). Finally, the court recognized that the reasonable-expectations doctrine "has generated criticism and confusion that give us pause," citing two commentators expressing concern "that the doctrine enables courts to vitiate the unambiguous terms of a policy simply to achieve desirable outcomes." *Id.* (citing John M. Bjorkman, *The Reasonable Expectations Doctrine: An Overview*, A.B.A. Brief, Summer 2000, at 38, 39; James M. Fischer, *The Doctrine of Reasonable Expectations Is Indispensable, If We Only Knew What For?*, 5 Conn. Ins. L.J. 151, 165 (1998)). "Against this backdrop," the court was

> unwilling to expand the doctrine of reasonable expectations beyond its current use as a tool for resolving ambiguity and for correcting extreme situations like that in *Atwater*, where a party's coverage is significantly different from what the party reasonably believes it has paid for and

---

court decision applying state law, *Tower* is not controlling, nor do we find it particularly persuasive in light of subsequent Minnesota Supreme Court precedent explaining the reasonable-expectations doctrine.

where the only notice the party has of that difference is in an obscure and unexpected provision.

*Id.*

We considered *Carlson* and Minnesota's reasonable-expectations doctrine in *Babinski v. American Family Insurance Group*, 569 F.3d 349 (8th Cir. 2009). In *Babinski*, we noted that "Minnesota's doctrine of reasonable expectations is extremely narrow and applies only on the few egregious occasions when an exclusion is disguised in a policy's definitions section." *Id.* at 353 (quotation and citation omitted). We declined to apply the doctrine in that case "[b]ecause the Policy is not ambiguous and does not contain a hidden exclusion." *Id.* (citation omitted).

The Trustee acknowledges that the exclusion at issue in this case is not hidden in the definition or other unexpected section. Nonetheless, the Trustee argues that the Minnesota Supreme Court used the phrase "obscure and unexpected" to encompass something broader than a misplaced provision. The Trustee advances an interpretation that focuses on whether the subject provision is commonly used and well understood by the general public. The Trustee further reasons that because "[t]here is nothing in the coverage provisions of the policy which would alert an insured that his negligence may not be covered because of a criminal acts provision," "[t]he typical insured would be surprised to find out [his] negligent acts are not covered." Finally, the Trustee connects the reasonable-expectations doctrine and the doctrine of adhesion, concluding that the unequal bargaining power of the parties "makes the exclusion even more obscure and unexpected and beyond [Eric's] reasonable expectations."

The Trustee's arguments misapprehend the narrow focus of Minnesota's reasonable-expectations doctrine. The doctrine forces insurers to communicate the coverage and exclusions of their policies clearly; it is not a means of avoiding

-5-

unambiguous policy language. The Minnesota Supreme Court's opinion in *Carlson* and our opinion in *Babinski* make clear that an "obscure and unexpected provision" is one whose significance is obscured by means of an unexpected placement within the policy or through the use of terminology intended to conceal its presence. A prime example is an exclusion in the definitions section, or some similar, unexpected concealment of a provision's true import within the policy. *See Carlson*, 749 N.W.2d at 47. Thus, an obscure and unexpected policy provision will probably only be discovered through "painstaking study of the policy provisions." *Id.* at 48 (quotations and citations omitted). It is not sufficient that the provision is one that is simply uncommon or unknown by the general public.

In this case, the policy expressly listed the criminal-acts exclusion in the exclusion section of the policy between exclusions related to controlled substances and pollution. The exclusion is independently numbered, is emphasized with a bold title, and is plainly stated. Even a cursory review of the policy would have revealed that the policy does not cover "'[b]odily injury' or 'property damage' arising from any criminal act." Although the same conduct can, in some circumstances, be both a civil tort and a crime, conduct that would constitute a criminal act is readily ascertainable by resort to statutory law and should not surprise most insureds.

In sum, the district court correctly concluded that Minnesota's reasonable-expectations doctrine is inapplicable in this case and correctly granted summary judgment to Country Mutual.

### III. *Conclusion*

Accordingly, we affirm the final judgment of the district court.

_____