United States Court of Appeals
For the Eighth Circuit
No. 24-2245

Timeless Bar, Inc., doing business as The Press Bar and Parlor; Horseshoe Club, LLC; Jessie Welsh

*Plaintiffs - Appellants*

v.

Illinois Casualty Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 19, 2025
Filed: July 22, 2025

_____

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.

_____

ERICKSON, Circuit Judge.

This appeal involves an insurance dispute following a fire that destroyed The Press Bar and Parlor in St. Cloud, Minnesota. The bar was operated by Timeless Bar, Inc., and the property was owned by Horseshoe Club, LLC (collectively "the entities"). The insurer denied coverage after its determination that Andrew Welsh—a controlling officer of both entities—intentionally set the fire and submitted a false

proof of loss. The entities, along with the other bar owner, Jessie Welsh, filed suit. The district court[1] concluded Andrew's conduct barred recovery under the policy and granted summary judgment to the insurer. We affirm.

## I.   BACKGROUND

In 2016, Andrew and Jessie Welsh, then husband and wife, purchased The Press Bar and Parlor. They managed the business through two legal entities: Horseshoe Club, LLC, which owned the real estate, and Timeless Bar, Inc., which operated the bar. Andrew and Jessie were the sole members of the LLC and the only shareholders and officers of the corporation. Illinois Casualty Company ("ICC") issued a business owner's policy that provided coverage for the bar's business property and operations. Timeless Bar was the named insured under the policy, while Horseshoe Club was an additional insured. However, neither Andrew nor Jessie was a named or additional insured.

Andrew and Jessie split responsibilities at the bar. Andrew served as the Chief Executive Officer of Timeless Bar and the Chief Executive Manager of Horseshoe Club. He had broad authority to conduct financial transactions, enter into agreements, and manage regular business operations. Jessie was responsible for the day-to-day management of the bar, including obtaining and maintaining the necessary food service and health permits. The couple divorced in November 2019, and thereafter Andrew assumed sole control over the businesses' finances. By the end of 2019, Jessie no longer had access to the businesses' bank accounts, but she remained involved in day-to-day operations.

On February 17, 2020, The Press Bar and Parlor was destroyed by fire. The following week, Timeless Bar and Horseshoe Club submitted a claim to ICC. Andrew and Jessie each signed the sworn proof of loss, stating the fire was of

_____

[1]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota.

-2-

unknown origin and it "did not originate by any act, design, or procurement on the part of your insured." The claimed loss totaled approximately $1.96 million.

A law enforcement investigation ensued and found Andrew had intentionally set the fire. He later pled guilty to and was convicted of arson. After his plea, ICC denied the insurance claim, citing three provisions in the policy: (1) Concealment, Misrepresentation or Fraud, which permits the insurer to deny coverage for a willful concealment or misrepresentation of a material fact; (2) the Dishonesty Exclusion, which excludes losses caused by dishonest or criminal acts; and (3) the Intentional Acts Exclusion, which bars coverage for damage caused with the intent to cause a loss, but is inapplicable to "an innocent co-insured who did not cooperate in or contribute to the creation of the loss if . . . the perpetrator of the loss is criminally prosecuted for the act causing the loss." ICC asserted Andrew's conduct could be imputed to both entities and coverage was precluded under all three exclusions.

Timeless Bar, Horseshoe Club, and Jessie filed suit, asserting five claims: (1) reformation under Minnesota Statute § 65A.01; (2) breach of contract; (3) equitable relief on behalf of Jessie as an innocent co-insured; (4) a request for declaratory judgment; and (5) an order compelling appraisal. The district court dismissed Jessie's claims on the ground that she lacked standing as a non-insured. On cross-motions for summary judgment, the court ruled in favor of ICC, concluding Andrew's conduct was attributable to both business entities and the policy did not provide coverage for the loss or damage caused by the fire. The court further held Minnesota's statutory protection for innocent co-insureds did not extend to the corporate entities. This appeal followed.

## II.   DISCUSSION

We review the district court's grant of summary judgment *de novo*. Jordan v. NUCOR Corp., 295 F.3d 828, 834 (8th Cir. 2002). Sitting in diversity, we apply Minnesota substantive law. Hanna v. Plumer, 380 U.S. 460, 465 (1965). Under Minnesota law, the insured bears the initial burden of establishing a prima facie case

for coverage.  <u>SCSC Corp. v. Allied Mut. Ins. Co.</u>, 536 N.W.2d 305, 311 (Minn. 1995).  The burden then shifts to the insurer to establish an applicable exclusion.  <u>Midwest Family Mut. Ins. Co. v. Wolters</u>, 831 N.W.2d 628, 636 (Minn. 2013).

Under the terms of the business owner's policy at issue, ICC contracted to "pay **you** for direct physical loss of or damage to **your** Covered Property at the 'premises' described in the Declarations caused by or resulting from any Covered Cause Of Loss." (emphasis added).  The terms "you" and "your" as used in the coverage form and endorsements refer to "the Named Insured shown in the Declarations."  The named insured in the policy declarations is listed as "Timeless Bar Incorporated dba The Press Bar and Parlor."  Horseshoe Club LLC was listed as an additional insured in the policy.

Coverage under the policy is subject to a number of conditions.  One of the listed conditions is categorized as "concealment, misrepresentation or fraud."  With respect to loss or damage caused by fire, the policy, as relevant to Minnesota insureds, stated:

> **C.  Concealment, Misrepresentation Or Fraud**
> We do not provide coverage to you if you or any "authorized representative" has:
> **1.**  Before a loss, willfully; or
> **2.**  After a loss, willfully and with intent to defraud;
> concealed or misrepresented any material fact or circumstances concerning:
> > **a.**  This Policy;
> > **b.**  The Covered Property;
> > **c.**  Your interest in the Covered Property; or
> > **d.**  A claim under this Policy.

It is undisputed that Andrew materially misrepresented the cause of the fire to ICC.  The dispositive question is whether Andrew's conduct is attributable to the

-4-

business entities and Jessie. Because neither the entities nor Jessie were involved in setting the fire, they contend the policy must be reformed to permit recovery under Minnesota's standard fire insurance policy. Minn. Stat. § 65A.01. In relevant part, this statute provides that a policy is void only if "the insured has willfully and with intent to defraud, concealed or misrepresented any material fact or circumstance." Minn. Stat. § 65A.01, subd. 3. Jessie and the entities assert that ICC's denial of coverage violates this standard and Minnesota caselaw. We disagree.

Before the district court, Jessie, relying on Hogs Unlimited v. Farm Bureau Mut. Ins. Co., 401 N.W.2d 381, 386 (Minn. 1987), and Watson v. United Servs. Auto. Ass'n, 566 N.W.2d 683, 692 (Minn. 1997), contended ICC wrongfully denied her claim because she is an innocent co-insured. We need not resolve this issue because Jessie has advised this Court that she no longer challenges the district court's order dismissing her individual claims.

As to the entities, they have failed to identify any Minnesota case extending the "innocent co-insured" doctrine to either corporations or limited liability companies. Under Minnesota law, these entities act through their agents. See Nicollet Restoration, Inc. v. Turnham, 486 N.W.2d 753, 754 (Minn. 1992); 301 Clifton Place L.L.C. v. 301 Clifton Place Condo. Ass'n, 783 N.W.2d 551, 560–61 (Minn. Ct. App. 2010). Acts taken within the scope of an officer's authority—whether honest or fraudulent—are attributable to the entity. Travelers Indem. Co. v. Bloomington Steel & Supply Co., 718 N.W.2d 888, 896–97 (Minn. 2006). In Pioneer Indus., Inc. v. Hartford Fire Ins. Co., 639 F.3d 461, 467–68 (8th Cir. 2011), this Court applied Minnesota agency principles to conclude that a corporation was accountable for a corporate officer's fraudulent misrepresentations used to secure insurance coverage, and the insurer in Pioneer was permitted to rescind the policy based on the officer's misconduct. Id. at 468.

The same result follows here. Andrew was an executive officer for both business entities and exercised operational and financial control of the entities. His misrepresentations to ICC arose from his authority to manage insurance matters.

Accordingly, his conduct is attributable to both corporate entities. To extend the innocent-insured doctrine as urged by the entities would insulate businesses from the misconduct of those authorized to act on their behalf—something that does not find support in Minnesota law or its caselaw. As noted by the district court, the policy determination of whether coverage should be extended to innocent, non-named business owners rests with the state legislature, not the federal courts.[2]

## III.  CONCLUSION

We affirm the district court's judgment.

_____

---

[2]Because ICC had no obligation to provide coverage for the insurance claim due to Andrew's misrepresentation, we need not address the remaining grounds for which ICC denied coverage.